**STATE of Missouri, Respondent,**

v.

**Rickman LEWIS, Appellant,**

**and**

**Rickman LEWIS, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 46010.**

Missouri Court of Appeals,
Western District.

Feb. 15, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 29, 1994.

Application to Transfer Denied
May 26, 1994.

Susan L. Hogan, Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

Before BERREY, C.J., P.J., and KENNEDY and ELLIS, JJ.

ELLIS, Judge.

On December 4, 1991, Rickman Lewis was convicted by a Cole County jury of one count of first degree robbery, § 569.020, RSMo 1986, and one count of armed criminal action, § 571.015, RSMo 1986. He was sentenced by the trial court as a prior and persistent offender to consecutive terms of fifteen years imprisonment on the robbery count and five years imprisonment on the armed criminal action count, and timely filed both a notice of direct appeal and a motion for post-conviction relief under Rule 29.15. After an evidentiary hearing, the trial judge denied Lewis' Rule 29.15 motion, and he appealed that ruling. This consolidated appeal under Rule 29.15(*l*) followed. We affirm his convictions and the trial court's denial of his Rule 29.15 motion.

Viewed in the light most favorable to the verdicts, the evidence at trial established that on August 25, 1991, the day of the crime, Lewis lived in the basement of a house at 617 Linn Street in Jefferson City. That evening, Lewis asked John Ward, who also lived at 617 Linn Street, if Ward wanted to make some money, and Ward said yes. Around 9:00 p.m., Lewis told Ward he was going to commit a robbery, and promised to give Ward some of the loot if Ward would drive him to the site of the crime. Ward agreed to do so, and about 9:30 p.m., Ward drove Lewis to the Break Time Convenience Store on the corner of Clark and Dunklin in Jefferson City. Ward parked the car nearby, and Lewis entered the store.

Adeline Pruitt was working in the store that night. While she was in the back room getting a cleaning towel, she heard the beeper on the front door go off and looked at a video monitor to see who had come in. She quickly locked herself in the bathroom located in the rear of the store because it appeared from the monitor that the person who had just entered was wearing a nylon mask or pantyhose over his head like the individual who had robbed the store on her shift two weeks earlier. About fifteen seconds later, Pruitt heard the beeper sound again, indicating that the person she saw on the monitor had left the store. Feeling vulnerable, Pruitt called home and asked her adult child, Steven Pruitt, to come to the store and stay with her until closing time. He joined his mother after walking the four or five blocks from the Pruitt's home to the store.

Meanwhile, Lewis, who had been gone for twenty minutes, returned to the parked car occupied by Ward. Lewis told Ward that nobody was in the store, and asked Ward to return to the store after driving around the block. Ward did so, then parked the car in the same place he had parked it earlier. Lewis got out and headed back into the store. When he got there, Adeline and Ste-

ven Pruitt were both behind the counter. When Adeline Pruitt saw Lewis enter the store, she told her son: "He is here. Here he comes again." Lewis, who had pulled a black nylon mask or pantyhose over his head and was wearing glasses underneath, walked up to the counter, pointed an old, rusty, beat-up revolver at her, and demanded: "Give me all the money. Open the register and give me all the money. Do it now." She opened the register and attempted to hand the money inside to Lewis, but Lewis told her he wanted the money put in a sack. At this point, Lewis ordered Steven Pruitt, who was seated in a chair behind the counter and had been observing Lewis carefully, to lay down on the floor. He complied with Lewis' demand. Adeline Pruitt grabbed a sack, stuffed the money in it, and attempted to give it to Lewis, but Lewis said "No. I want cigarettes." When she had filled the bag with cigarettes, Lewis said "That's enough. Give it to me." After Adeline Pruitt handed Lewis the bag, he fled. She then called the police.

When Lewis returned to the parked car, he had a paper sack with him. Ward and Lewis then returned to the house at 617 Linn Street. When they got there, Ward went upstairs and Lewis went down to the basement. Shortly thereafter, Lewis came up from the basement and gave Ward $10 and a pack of cigarettes.

Two days later, police officers went to 617 Linn Street and spoke to Lewis and Ward, who both agreed to go to the police station for questioning. Ward, who was questioned first, admitted his involvement in the robbery.[1] After waiving his *Miranda* rights, Lewis denied committing the robbery. However, after an officer described the gun used in the robbery, Lewis said he had one just like it. When the officer asked where the gun was located, Lewis replied that it was in the basement of the residence at 617 Linn Street and told the officer exactly where to find it. Police found the weapon in the same place described by Lewis. When they brought it back to the station, Lewis said it was not his gun and continued to deny he had committed the robbery.

On the afternoon of the next day, the police held a lineup at the police station in Jefferson City. The Pruitts viewed the line-up separately, and there was no information or prompting whatsoever from the police. Adeline and Steven Pruitt both positively identified Lewis as the robber. In addition, they both positively identified the old, beat-up, rusty gun found in the basement of the home at 617 Linn Street as the one used in the August 25, 1991 robbery. Adeline Pruitt was particularly sure her identification was correct because she recognized Lewis as the same man who robbed the store two weeks before. She recalled that while the first robber did not have glasses and was wearing beige rather than black pantyhose over his head, his voice, body build, and skin tone were the same as Lewis' and he used the same beat-up gun.

On November 25, 1991, Lewis' attorney, Jan King, filed a motion to suppress the lineup identifications made by Adeline and Steven Pruitt. On the morning of trial, the court took up and overruled the motion, citing Nineteenth Judicial Circuit Local Rule 33.1, which states, in relevant part: "All pretrial motions must be heard no later than five (5) days before trial. All motions not so heard shall be deemed overruled or denied." However, the court reminded King he was free to raise "the appropriate objection when the matter is tendered" at trial.

During trial, when Adeline Pruitt began to testify about the lineup, King objected "pursuant to the motion" he had filed before trial. The State told the trial court that it had "no objection to it [King's objection] running with the testimony," and the court overruled the objection. When Adeline Pruitt was first shown State's Exhibit # 4 (a photograph of the lineup), King renewed his objection, which was overruled after the trial court viewed the photograph. Referring to that picture, Adeline Pruitt identified Lewis as the man she recognized during the lineup. Shortly thereafter, State's Exhibit # 4 was admitted into evidence over King's continuing objection. Later, when Steven Pruitt began to testify about the lineup, King once again unsuccessfully objected.

1. During cross-examination at trial, Ward admitted he had been charged with and pleaded guilty to second degree robbery as a result of his in-

volvement in the August 25, 1991 incident at the Break Time Convenience Store.

Lewis chose not to testify in his own defense. He attempted to establish an alibi on the basis of Thomas and Joy Walker's testimony that Lewis was at their home located at 812 Capital Avenue in Jefferson City throughout the evening of August 25, 1991.

### Lewis' Direct Appeal

In his sole point on direct appeal, Lewis argues the trial court erred in permitting the jury to hear testimony concerning the lineup identifications and in admitting State's Exhibit #4 into evidence because the lineup and the photograph thereof were so inherently suggestive and conducive to mistaken identification that his constitutional rights to due process and a fair trial were violated.

"[T]he crucial test for the admission of identification testimony is two-pronged: (1) was the pre-trial identification procedure impermissibly suggestive, and (2) if so, what impact did the suggestive procedure have upon the reliability of the identification made by the witness." *State v. Hornbuckle*, 769 S.W.2d 89, 93 (Mo. banc 1989). In this case, we need go no further than the first prong since the record shows that the lineup viewed by Adeline and Steven Pruitt was in no way suggestive. State's Exhibit #4 depicts four physically similar, hand-cuffed, identically-clothed, dark-skinned, black-haired men wearing glasses standing against a wall. Each man has a mustache, and each is wearing a black nylon stocking pulled over his head. The man on the far left (Lewis) has a white clip-on badge with the number "1" on it, and the man on the far right has a similar badge with the number "4" on it.[2] Lewis was neither the tallest nor the shortest man in the lineup and had neither the lightest nor darkest skin. Indeed, there is nothing about the lineup itself which would have directed Adeline or Steven Pruitt's attention to Lewis. Because he failed to show that their lineup identifications were the product of "anything other than a freely independent selection" process, *State v. Young*, 597 S.W.2d 223, 225 (Mo.App.1980), the trial court properly permitted the jury to hear testimony concerning the lineup.

Without citing any authority, Lewis nevertheless argues that the *photograph of the lineup* is impermissibly suggestive and should not have been admitted because "the flash from the camera[3] lightened the actual view and intensified features that could not have been seen in the line-up room" when Adeline Pruitt identified him.[4] Lewis' contention is devoid of merit. The only testimony about the effect of the flash unit came from police officer Gene Johnson and Adeline Pruitt. Johnson, who watched the lineup and was present when the photograph was taken, simply said that the picture was taken using a camera equipped with a "flash enhancer." He also testified that because the photograph was taken from inside the lineup room, not the viewing room, "the individuals who made the identification were looking through a piece of glass [the two-way mirror in the viewing room] that the camera did not." On cross-examination, Adeline Pruitt did say that the flash unit probably "allow[ed] more detail to come through the stocking than what I could see with the naked eye" and that she "couldn't see their faces as well as that picture [State's Exhibit #4] shows them." However, she also testified that the lineup room was "well enough lit to see what was going on" through the two-way mirror and that she "could see enough detail" to positively identify Lewis based on her observations at the store.

Identification evidence will be excluded as impermissibly suggestive "only when the procedure was so suggestive that it gave rise to a very substantial likelihood of irreparable misidentification." *Hornbuckle*, 769 S.W.2d at 93 (citing *State v. Higgins*, 592 S.W.2d 151, 159 (Mo. banc 1979)). We cannot say as a matter of law that State's Exhibit #4 meets that standard. It was, therefore, admissible, and the extent to which Adeline Pruitt's perception and memory might have been influenced by the photograph, as well as the weight to be given her testimony, were proper questions for the jury. *Hornbuckle*, 769 S.W.2d at 94.

Lewis also argues that the lineup identifications were constitutionally infirm

---

2. The two men in the middle also had badges, but we cannot tell what was on them because their arms are in the way. We assume those badges had the numbers "2" and "3" on them.

3. State's Exhibit #4 was taken in the lineup room out of the Pruitts' presence using a camera equipped with a flash unit.

4. Steven Pruitt was also shown State's Exhibit #4 over King's continuing objection, but only after he had already identified Lewis in court as the man he picked out of the lineup. Since the lineup itself was not unduly suggestive, his identification was free of any taint supposedly introduced by the photograph.

because "the four men in the lineup were required to wear a nylon stocking over their heads [thus] distort[ing] their facial features and render[ing] the identification[s] unreliable." This is absurd. The very reason the stockings were required was to *enhance* the reliability of the lineup identifications by making the men in the lineup look as much as possible like each other and the robber actually encountered by Adeline and Steven Pruitt.[5] Furthermore, the lineup identifications made by the Pruitts were based on factors like height, weight, body build, skin tone, and so on, *not* individual facial features which would be obscured by a nylon mask. Point denied.

### Lewis' Rule 29.15 Motion

Lewis' remaining two points concern the denial of his Rule 29.15 motion for post-conviction relief. Lewis has the burden of proving his grounds for relief by a preponderance of the evidence. Rule 29.15(h). The decision on a motion for post-conviction relief under Rule 29.15 will be affirmed on appeal unless the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(j); *State v. Morgan*, 830 S.W.2d 41, 43 (Mo.App.1992). The post-conviction motion court's findings and conclusions are clearly erroneous only if a review of the entire record leaves the appellate court with a "definite and firm impression that a mistake has been made." *State v. Bradley*, 811 S.W.2d 379, 383 (Mo. banc 1991).

■ First, Lewis claims the motion court erred in overruling his Rule 29.15 motion in that he was denied effective assistance of counsel when King failed to: (1) schedule a hearing on his pretrial suppression motion five or more days before trial as encouraged by Nineteenth Judicial Circuit Local Rule 33.1; and (2) request an evidentiary hearing during trial on the admissibility of State's Exhibit #4. To prevail on these claims, Lewis must demonstrate that King's performance was deficient and that this deficient performance prejudiced his defense. *State v. Ervin*, 835 S.W.2d 905, 929 (Mo. banc 1992),

cert. denied, —— U.S. ——, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). However, "a court need not determine the performance component before examining for prejudice. If it is easier to dispose of the claim on the ground of lack of sufficient prejudice, the reviewing court is free to do so." *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). It is not enough for Lewis to show that King's alleged errors had some conceivable effect on the outcome of the proceeding. *Sidebottom v. State*, 781 S.W.2d 791, 796 (Mo. banc 1989), *cert. denied*, 497 U.S. 1032, 110 S.Ct. 3295, 111 L.Ed.2d 804 (1990); *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067. In order to demonstrate the requisite prejudice from King's supposed deficient performance, Lewis must show a reasonable probability that, but for King's errors, the result of the trial would have been different. *Leisure v. State*, 828 S.W.2d 872, 875 (Mo. banc), *cert. denied*, —— U.S. ——, 113 S.Ct. 343, 121 L.Ed.2d 259 (1992); *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. In the absence of any demonstration of prejudice from King's alleged errors, Lewis is not entitled to post-conviction relief under Rule 29.15. *State v. Scott*, 829 S.W.2d 120, 123 (Mo.App.1992).

■ It is manifest from the record that the result of Lewis' trial would not have been any different had a hearing on the November 25, 1991, motion to suppress been conducted before trial or had King requested an evidentiary hearing during trial on the admissibility of State's Exhibit #4. During the hearing on Lewis' Rule 29.15 motion, the trial judge indicated that even if the motion had been heard before trial, he would not have suppressed the photograph "[a]s a matter of law" and "would have let the jury determine" what weight to give it. Furthermore, the motion court made a finding that:

Public Defender Jan King presented to the court at trial his theory for the suppression of the pre-trial identification which evidence consisted of the photograph and this court rejected that evidence and did not and would not have sustained any motion

---

5. This also leads us to believe that Lewis would have complained if the four men participating in the lineup *had not* been wearing sheer nylon

mesh masks similar to those worn by the robber. He cannot have it both ways.

to suppress identification based on that evidence.

Since King later objected at trial and (as we concluded earlier) the trial court's rulings on the admissibility of the photograph and the related lineup testimony were entirely correct, we cannot say Lewis suffered any prejudice from King's allegedly deficient performance. *See State v. Hunter,* 840 S.W.2d 850, 870 (Mo. banc 1992) (counsel is not ineffective for failing to file a meritless motion to suppress); *Ervin,* 835 S.W.2d at 932 (trial counsel was not ineffective for failing to request a separate hearing on defendant's pretrial motion to suppress evidence where defendant did not show "whether these items were later objected to by trial counsel" or "whether a separate hearing had any chance of success"). Moreover, having decided the key substantive issues underlying this claim of error against Lewis on his direct appeal, we will not re-examine them on a theory of ineffective assistance of counsel. *Ervin,* 835 S.W.2d at 932; *Amrine v. State,* 785 S.W.2d 531, 536 (Mo. banc), *cert. denied,* 498 U.S. 881, 111 S.Ct. 227, 112 L.Ed.2d 181 (1990). Point denied.

Finally, Lewis argues the motion court erred in failing to find King ineffective for not objecting to Adeline Pruitt's testimony that she could identify Lewis as the robber because he had also robbed the store two weeks earlier. Citing *State v. Shaw,* 636 S.W.2d 667 (Mo. banc), *cert. denied,* 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982), Lewis argues the admission of that testimony violated his right to be tried only for the crimes with which he was charged.

■ Evidence of an uncharged crime is admissible if it is both logically relevant (i.e., has some legitimate tendency to establish directly the defendant's guilt of the crime for which he is on trial) and legally relevant (i.e., its probative value outweighs its prejudicial effect). *State v. Bernard,* 849 S.W.2d 10, 13 (Mo. banc 1993). Lewis contends that Adeline Pruitt's testimony was both logically and legally irrelevant. We disagree.

■ Evidence of an uncharged crime has a legitimate tendency to prove the specific crime charged and is therefore logically rele-

vant when it tends to establish " 'the identity of the person charged with the commission of the crime on trial.' " *Id.* (quoting *State v. Sladek,* 835 S.W.2d 308, 311 (Mo. banc 1992)).

■ Identity was the key issue in this case. By maintaining an alibi defense and trying to discredit the Pruitts' eyewitness identifications, Lewis attempted to convince the jury that they mistakenly identified him as the culprit. Moreover, the essence of the challenged testimony was that Adeline Pruitt was sure she had properly identified Lewis as the August 25, 1991, robber because she had seen him and the beat-up gun before during a robbery two weeks earlier. Thus the testimony (and the State's opening comments regarding it) was logically relevant as proof of identity.[6] *See State v. Fingers,* 585 S.W.2d 203 (Mo.App.1979) (in prosecution for first degree robbery of a service station, trial court did not abuse its discretion in admitting evidence of the defendant's attempt to rob the same service station two months earlier since the challenged evidence tended to establish the defendant's identity); *State v. Peterson,* 557 S.W.2d 691 (Mo.App.1977) (in first degree robbery prosecution, victim's testimony that the accused had also robbed him at the same location six days later was admissible on the issue of the defendant's identity).

■ We now consider Lewis' claim that Adeline Pruitt's testimony was legally irrelevant since its prejudicial effect outweighed its probative value. The balancing of the effect and the value of uncharged crimes evidence rests within the sound discretion of the trial court, *Bernard,* 849 S.W.2d at 13, "which is in the best position to evaluate whether the potential prejudice of relevant evidence outweighs the relevance." *State v. Henderson,* 826 S.W.2d 371, 374 (Mo.App.1992). The trial judge said during Lewis' Rule 29.15 hearing that he thought the challenged evidence was admissible to show identity. He thus implicitly reached the conclusion that the probative value of Adeline Pruitt's testimony in proving Lewis' identity outweighed its prejudicial effect, and nothing in the record suggests otherwise. Her testimony was, therefore, legally relevant and admissible. *State v. Twenter,* 818 S.W.2d 628, 643 (Mo. banc 1991).

---

6. In its brief, the State also argues the testimony is logically relevant in that it tends to establish motive and intent. *See State v. Anderson,* 687 S.W.2d 643 (Mo.App.1985). We need not address those arguments.

At the Rule 29.15 hearing, the trial judge expressed his belief that King was not remiss in his duty simply "because he didn't object to something that is admissible." He also questioned whether "you must object to everything whether there's a legal basis for it or not." This explains the motion court's finding that King was not ineffective because his failure to object at trial was "a reasonable decision based on trial strategy."

We agree with the sentiments expressed by the trial judge. Mere failure to object is not ineffective assistance of counsel, *State v. Lumpkin*, 850 S.W.2d 388, 395 (Mo.App. 1993), and trial counsel is not ineffective for failing to make non-meritorious objections. *Ervin*, 835 S.W.2d at 932; *Sidebottom*, 781 S.W.2d at 799. In particular, we will not deem counsel ineffective for failing to object to admissible evidence. *State v. Neal*, 849 S.W.2d 250, 258 (Mo.App.1993); *Twenter*, 818 S.W.2d at 643. Because our review of the entire record does not leave us definitely and firmly impressed that a mistake was made, Lewis' last point is denied.

We therefore affirm Lewis' convictions and the trial court's denial of his Rule 29.15 motion for post-conviction relief.

All concur.

