**STATE of Missouri,**
**Plaintiff/Respondent,**

v.

**Matthew HOLLERAN,**
**Defendant/Appellant.**

No. ED 86074.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 1, 2006.

Daniel N. McPherson, Assistant Attorney General, Jefferson City, MO, for respondent.

Charles E. Bridges, Bridges & Seibel, P.C., Saint Charles, MO, for appellant.

KATHIANNE KNAUP CRANE, Presiding Judge.

Defendant, Matthew Holleran, appeals from a judgment entered upon a jury verdict finding him guilty of tampering in the

first degree, in violation of section 569.080 RSMo (2000), and resisting arrest, in violation of section 575.150 RSMo (2000). The trial court found defendant to be a prior and persistent offender and sentenced him to nine years imprisonment on the tampering count and one year in the custody of the St. Charles County sheriff on the resisting arrest count, to be served concurrently.

Defendant has raised eight claims of error on appeal. We have determined that the state made a submissible case, but that the trial court erred in allowing the prosecutor to read into evidence defendant's guilty pleas to subsequent offenses and the information on which they were based because defendant did not testify and the other crimes evidence did not establish identity. Accordingly, we reverse and remand. We do not reach defendant's remaining claims of error because they were either not preserved or not likely to come up again on retrial. *See State v. Kinkead,* 983 S.W.2d 518, 519–20 (Mo. banc 1998).

## FACTUAL AND PROCEDURAL BACKGROUND

On July 17, 2001, in St. Charles County, Missouri, two citizens directed Missouri State Highway Patrol Trooper John Mason to a 2001 green Blazer that had been cutting off other vehicles. After Trooper Mason watched the Blazer make a u-turn and drive by him, he pulled out behind the Blazer with the intention of making a traffic stop. The driver of the Blazer made two turns, pulled into a parking spot near the manager's office in a motel parking lot, and exited the vehicle. Trooper Mason pulled in behind the Blazer. Two passengers, a young woman and a juvenile, remained in the Blazer.

Trooper Mason walked toward the Blazer and met the driver between the Blazer and the patrol car. He informed the driver that he had received a complaint that the driver had almost caused an accident, and asked to see his driver's license and insurance. The driver did not provide either document. The driver responded that he did not have his driver's license with him, but that he could retrieve it from his motel room. Trooper Mason told him that was not necessary, that he could run a check of his driving status if the driver provided his name, date of birth, and Social Security number, and he told the driver to have a seat in the patrol car. The driver walked towards the passenger side of the patrol car, tapped on the hood twice, and then ran away. Trooper Mason chased the driver on foot, but lost sight of him after he entered the heavily wooded area behind the motel.

While Trooper Mason was chasing the driver, the two passengers in the Blazer also fled into the woods. Trooper Mason located the passengers and questioned them about the driver. The juvenile indicated that he was living with the driver of the Blazer, but that he didn't know anything about him except that his name was "Jay." The juvenile pointed to a service station and said that "Jay's" sister, Stephanie Warren, worked there. The other passenger, Cassandra Furlong, initially denied knowing the driver. Later, she told Trooper Mason that she had been dating the driver for about eight months, that his name was James Gegg, that his birthdate was October 9, 1978, and that he had an ex-girlfriend and a newborn child in the Chesterfield area.

Trooper Mason retrieved the keys to the Blazer. The Blazer had a dealer's license plate on the rear and a passenger car license plate on the front. Neither plate was registered to the Blazer. In addition, the Blazer did not contain an insurance card or Department of Revenue papers relating to the Blazer, but contained a

Department of Revenue form and miscellaneous papers for other vehicles.

The dealer plate belonged to Feld Chevrolet and had been removed from Feld Chevrolet's premises without authorization. The Blazer was owned by Elco Chevrolet in Ballwin, Missouri. Elco personnel were not aware that the Blazer had been taken from Elco's lot until Trooper Mason contacted them. No one had permission to take the Blazer from the Elco lot in July 2001. Defendant had been employed by Elco from August 23, 1999, until he was involuntarily terminated on September 24, 1999. He had been hired by the new car and truck manager. That manager had the practice of keeping the keys for the vehicles on the lot on a keyboard in his office, and specifically did so in 1999 and in July 2001.

Sergeant Ron Moushey of the Ballwin Police Department investigated the theft of the Blazer. Sgt. Moushey brought Mr. Gegg in for questioning, photographed him, and released him. Mr. Gegg gave defendant's name to Sgt. Moushey. Mr. Gegg said that he knew defendant's brother, and that defendant had used Mr. Gegg's name in the past. After viewing photographs of Mr. Gegg, Trooper Mason confirmed that Mr. Gegg was not the driver of the Blazer. Trooper Mason subsequently identified defendant from photographs as the driver of the Blazer. Defendant was thereafter charged by information in St. Charles County with tampering in the first degree in connection with operating the Blazer, resisting arrest, and receiving stolen property, the dealer license plate.

The primary issue at trial was whether defendant was the driver of the Blazer. Trooper Mason identified defendant as the driver at trial. However, defendant attempted to discredit his identification through cross-examination and the introduction of contrary evidence.

During trial, defense counsel made an oral motion *in limine* to prevent the state from introducing evidence that defendant had been charged and convicted of felony stealing of items from a Wal–Mart in Camden County, Missouri, on July 24 and 26, 2001, in concert with Cassandra Furlong and Stephanie Warren. At the hearing on the motion, the prosecutor argued that she wanted to introduce a certified copy of those convictions because Ms. Furlong's and Ms. Warren's names had come up in Trooper Mason's investigation, and the convictions were relevant to establish defendant's identity. Defense counsel objected on the grounds that the evidence was hearsay, did not tend to prove identity, did not fall into any of the other recognized exceptions for the admission of other crimes evidence, and was not related to the offenses for which defendant was on trial, but was prejudicial propensity evidence. Defense counsel also objected to the proposed procedure of introducing the convictions by a certified copy without a witness or an opportunity for cross-examination. The court ruled that it would allow the state to read the certified copy of the information and the first paragraph of the plea memorandum in its case, but ordered the paragraphs of the plea memorandum reciting the punishment to be redacted.

When the state formally offered the certified copy of the information and plea memorandum into evidence, the court found, over defendant's objection, that it was "legally and logically relevant to establish the identity of the defendant, and that [its] probative value overcomes the prejudicial effect." The prosecutor obtained permission to read the exhibit, but instead of reading the documents verbatim, recited the following:

MS. MUHM: There is information in which the defendant pled guilty to two counts. The first one is that he committed the Class C felony of stealing on or about Thursday, July 26th, 2001, in the County of Camden, State of Missouri, the defendant, acting in concert with Cassandra L. Furlong and Stephanie Warren, appropriated specific items from Wal–Mart of a value of at least $750, which property was owned by Wal–Mart, and defendant appropriated such property without the consent of Wal–Mart and with the purpose to deprive them thereof.

Count 2 is also the defendant committed the Class C felony of stealing in that on or about Tuesday, July 24th, 2001 in the County of Camden, State of Missouri, the defendant acting in concert with Cassandra L. Furlong and Stephanie Warren, appropriated specific property or specific items from Wal–Mart that had a value of at least $750, which property was owned by Wal–Mart, and defendant appropriated such property without the consent of Wal–Mart and with the purpose to deprive them thereof.

In the plea memorandum the State appears by prosecuting attorney. Defendant appears with attorney, Kyle Wyatt and waives formal arraignment and pleads guilty to Count 1 and Count 2.

The Court finds that defendant's plea of guilty is given voluntarily, understandingly and knowingly, and that plea of guilty is accepted.

## DISCUSSION

1. *Erroneous Admission of Other Crimes*

We begin with defendant's sixth point in which he contends that the trial court erred in allowing the state to read to the jury the information filed against him in Camden County and his guilty plea to both charges.

Evidence that a defendant has committed crimes separate and distinct from the crime for which he or she is standing trial is generally inadmissible. *State v. Mallett*, 732 S.W.2d 527, 534 (Mo. banc 1987); *State v. Blackman*, 875 S.W.2d 122, 139 (Mo.App.1994). Specifically, evidence of separate and distinct crimes is not admissible to show that a defendant had a tendency to commit such crimes. *State v. Clover*, 924 S.W.2d 853, 855 (Mo. banc 1996); *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304, 307 (1954). Evidence of other crimes that are not properly related and logically relevant to the cause on trial violates a defendant's right to be tried for the offense with which he or she has been charged. *Clover*, 924 S.W.2d at 855; *Reese*, 274 S.W.2d at 307.

However, when a defendant testifies, he or she is subject to cross-examination and impeachment, and his other prior criminal convictions, including guilty pleas, may be proved, by cross-examination or by the record, to impeach his or her credibility. Section 491.050 RSMo 2000; *State v. Flenoid*, 838 S.W.2d 462, 468 (Mo.App.1992). In this case, defendant did not testify, and therefore, the state could not introduce the record of defendant's convictions under this statute.

Alternatively, a prior or subsequent conviction may be introduced as evidence of an offense if it has some legitimate tendency to directly establish the defendant's guilt of the charge for which he or she is on trial. *Reese*, 274 S.W.2d at 307; *Flenoid*, 838 S.W.2d at 469. Evidence of other crimes is admissible if it is logically relevant, in that it has some legitimate tendency to establish directly the defendant's guilt of the charges for which he or she is on trial, and if the evidence is

legally relevant, in that its probative value outweighs its prejudicial effect. *Clover,* 924 S.W.2d at 855 (quoting *State v. Bernard,* 849 S.W.2d 10, 13 (Mo. banc 1993)). "Evidence is logically relevant when it tends to establish, for example, motive, intent, the absence of mistake, a common scheme or plan, or the identity of the person charged with the commission of the crime." *Id.* Uncharged conduct evidence may also be admitted to show a defendant's knowledge of facts that give rise to an inference of a defendant's awareness of his or her commission of the charged crime. *Id.*

 Here, the state claims that the evidence of the Camden County information and guilty pleas were relevant to prove identity. Evidence of other crimes may be introduced to connect and identify a defendant with the case on trial if identity is in issue. *Reese,* 274 S.W.2d at 307; *State v. Anthony,* 881 S.W.2d 658, 660 (Mo.App.1994). Identity may be placed in issue by a defense, cross-examination, or argument disputing identification. *Anthony,* 881 S.W.2d at 660.

In this case, identity was an issue. Courts have recognized a number of situations in which other crimes evidence is logically relevant to prove identity. However, the evidence of defendant's Camden County convictions does not fall into any of these categories.

 For example, identity as a criminal may be proven if the "other crimes evidence [qualifies] under the signature modus operandi exception by fulfilling two components: similarity and uniqueness." *Anthony,* 881 S.W.2d at 660. *See also Bernard,* 849 S.W.2d at 17; EDWARD J. IMWINKELRIED, UNCHARGED MISCONDUCT EVIDENCE, section 3.10 (Rev. Ed.2001).

First, the other crime and the crime charged must bear striking similarity in the type and methodology of crimes committed, in the time span between the crimes, and in the geographic distance separating the two crimes. IMWINKELRIED, *supra,* section 3.11. Yet a series of identical crimes committed close in time and in proximity cannot alone fulfill the signature modus operandi exception. *Id.,* section 3.12; *see Bernard,* 849 S.W.2d at 17. In addition to striking similarity, the other crime and the crime charged must share a unique methodology identifying the defendant as the perpetrator. IMWINKELRIED, *supra,* section 3.12. That methodology must be so unique and distinctive as to become a signature to the defendant's involvement in both crimes. *Bernard,* 849 S.W.2d at 17.

*Anthony,* 881 S.W.2d at 660. It is necessary to show that the crimes were "signature" crimes in order "to link the one crime to the other, tending to prove that the known perpetrator of one crime was the unknown perpetrator of the other." *Id.; see also State v. Bird,* 854 S.W.2d 807, 809 (Mo.App.1993); *State v. Phillips,* 854 S.W.2d 803, 805 (Mo.App.1993).

 The crime of stealing merchandise from a Wal–Mart store in Camden County is not similar, much less strikingly similar, to the crime of driving an automobile in St. Charles County without the owner's permission. These are not within the same class of crime and were not committed with any unique or personal methodology. Proof of the theft from Wal–Mart was not admissible to prove, by the similarity of the two offenses, that defendant was the driver of the stolen Blazer. The crime of stealing merchandise from a store in Camden County does not qualify as evidence of identity under the signature modus operandi exception.

Evidence of other crimes may also be admissible to establish identity when the

misconduct has occurred in an encounter that explains an eyewitness's ability to identify a defendant. IMWINKELREID, *supra*, section 3:07. *See, e.g., State v. Lewis*, 874 S.W.2d 420, 426 (Mo.App.1994). The Camden County convictions were not used for this purpose in this case.

Another situation involves "a small number of cases, [in which] the courts have admitted evidence that seemed to trace the defendant to a crime although the evidence suggested uncharged misconduct by the defendant." IMWINKELRIED, *supra*, section 3:31, at 155.

In the trace cases, there are two common denominators. The first is that the issue is the defendant's possession of a thing or place. The prosecutor attempts to link or trace the defendant to a thing such as an attaché case or a place such as a room. The second commonality is that the prosecutor offers evidence of objects bearing the defendant's name that were found in the thing or at the place in question. When these two factors concur, the courts admit the evidence to establish the defendant's identity as the criminal even if the evidence suggests uncharged misconduct by the defendant.

*Id.* at 156. Similarly, a defendant's later possession of the instrumentality used to commit the crime may be admitted to establish identity, even if that evidence also shows a separate crime. *See, e.g., State v. Herrington*, 890 S.W.2d 5, 7 (Mo.App. 1994); *State v. Hemphill*, 699 S.W.2d 83, 84 (Mo.App.1985). Likewise, a defendant's possession of the fruits of the crime is admissible to show identity, even if it incidentally shows the commission of another offense. *See, e.g., State v. Shabazz*, 467 S.W.2d 909, 912 (Mo.1971).

The state does not claim that the Camden County convictions fall into any of these categories, but argues that the con-victions establish identity because defendant was charged with acting in concert with Ms. Warren and Ms. Furlong, Ms. Furlong was in the Blazer when it was stopped, and the other passenger in the Blazer mentioned Ms. Warren's name. This evidence of a relationship has no logical relevance.

The inference that defendant was the person driving the Blazer was not a reasonable inference that could be drawn from the facts that Ms. Furlong was in the Blazer, Ms. Warren's name was mentioned by another passenger in the Blazer, and defendant was in the company of Ms. Furlong and Ms. Warren a week after the crime. The evidence of defendant's later association with these women is not inconsistent with the theory that defendant was not the driver. Therefore, the fact that defendant was with these two women a week later does not incriminate him. *State v. Keller*, 471 S.W.2d 196, 199 (Mo. 1971). *See also United States v. Van Scoy*, 482 F.2d 347 (10th Cir.1973) (A defendant's criminal record not admissible in government's case in chief to show that the defendant and the codefendant had been inmates together and knew each other and that, as a result of this association, the defendant was the person who participated with the codefendant in a bank robbery).

Defendant's Camden County convictions demonstrate no logical relevance to his identity as the driver of the Blazer. The evidence of those convictions was not admissible. Point six is granted.

When the trial court errs by admitting improper evidence, the remedy is to reverse and remand for a new trial. *State v. Wood*, 596 S.W.2d 394, 398 (Mo. banc 1980); *State v. Taber*, 73 S.W.3d 699, 707 (Mo.App.2002). However, before we order a remand on the tampering count, we must consider whether the state made

a submissible case. *See State v. Basham,* 568 S.W.2d 518, 521 (Mo. banc 1978). If the state has not made a submissible case, the double jeopardy provisions of the Fifth Amendment of the United States Constitution preclude a retrial. *Id.*

### 2. *Submissibility*

■ Defendant's sole challenge to submissibility is contained in his eighth point. There, defendant contends that the trial court erred in denying his motion for judgment of acquittal at the close of all the evidence because the state failed to make a submissible case of tampering in the first degree. He claims that the state failed to offer sufficient evidence from which a jury could infer that he "knowingly" operated the vehicle without the owner's consent.

■ A person commits the crime of tampering in the first degree if he or she knowingly operates an automobile without the consent of the owner. Section 569.080.1(2) RSMo (2000); *State v. Hinkle,* 987 S.W.2d 11, 12 (Mo.App.1999). Criminal intent is an essential element for conviction under this statute, which "requires a showing that the defendant operated the motor vehicle *knowing* that he did not have the owner's permission." *State v. Ransom,* 500 S.W.2d 585, 587 (Mo.App. 1973); *see also State v. Goodman,* 531 S.W.2d 777, 778 (Mo.App.1975).[1]

■ "Direct proof of a required mental state is seldom available and such intent is usually inferred from circumstantial evidence." *State v. Brown,* 660 S.W.2d 694, 699 (Mo. banc 1983); *see also State v. French,* 79 S.W.3d 896, 900 (Mo. banc 2002). Specifically, a defendant's knowledge in a tampering case may be inferred from circumstantial evidence. *Ransom,*

500 S.W.2d at 587. The exclusive and unexplained possession of recently stolen property is a circumstance a jury can consider, along with other facts and circumstances, to draw the inference that the possessor of stolen property knew the property was stolen. *State v. Langdon,* 110 S.W.3d 807, 813 (Mo. banc 2003); *State v. Taylor,* 691 S.W.2d 379, 382 (Mo.App. 1985); *Ransom,* 500 S.W.2d at 588. *See also Goodman,* 531 S.W.2d at 778.

■ There are numerous types of "other facts and circumstances" that, together with the unexplained possession of recently stolen property, are sufficient to establish knowledge. "The defendant's mental state may be determined from evidence of the defendant's conduct before the act, from the act itself, and from the defendant's subsequent conduct." *State v. Hineman,* 14 S.W.3d 924, 927–28 (Mo. banc 1999). "[A] defendant's presence, opportunity, companionship, conduct, and flight are circumstances from which his purpose to commit a crime can be inferred." *State v. Shelton,* 770 S.W.2d 716, 717 (Mo.App.1989).

■ Evidence that, after being stopped by a police officer and directed to remain, a defendant fled and hid is admissible evidence tending to prove a consciousness of guilt. *State v. Smith,* 11 S.W.3d 733, 737 (Mo.App.1999); *State v. Williams,* 676 S.W.2d 845, 847 (Mo.App. 1984). The inference likewise applies when a police officer observes a defendant operating or tampering with a stolen vehicle, and defendant flees upon contact with the police officer. *Hinkle,* 987 S.W.2d at 12; *State v. Watkins,* 604 S.W.2d 19, 21 (Mo.App.1980). In addition, evidence of a desire to conceal one's identity from au-

---

1. These cases construed section 560.175 RSMo 1969, a predecessor to section 569.080.1(2).

thorities shows consciousness of guilt. *State v. Wheeler*, 802 S.W.2d 517, 519 (Mo. App.1989). *See also State v. Sanders*, 748 S.W.2d 835, 836 (Mo.App.1988); *Smith*, 11 S.W.3d at 737.

Defendant relies on *State v. Presberry*, 128 S.W.3d 80, 97–98 (Mo.App.2003) and *In the Interest of V.L.P.*, 947 S.W.2d 546, 547–48 (Mo.App.1997). In both cases, the respective appellate courts reversed tampering convictions because there was insufficient evidence on which to base an inference that the defendant knew the vehicle was stolen. These cases are distinguishable because the only basis for inferring knowledge in those cases was on the theory that defendant was in exclusive possession of recently stolen property, and there was insufficient evidence of the facts required for that inference. In *V.L.P.*, the juvenile was seen driving the stolen automobile five months after it left the rental car company's possession, and the juvenile testified that he first drove the car that day at the request of his cousin, who, he believed, legitimately possessed the car and its keys. 947 S.W.2d at 546–47. There was no evidence that the automobile had been "recently" stolen before the juvenile took possession. In *Presberry*, there was no evidence about when the automobile had been stolen, and no other basis for inferring knowledge. 128 S.W.3d at 98. For example, the defendant stayed with the stolen vehicle while his passenger, who had left the car, was being apprehended by police. *Id.*

In this case, defendant was in the exclusive possession of the Blazer and its keys while he was operating it. Although there were passengers in the Blazer, exclusive possession may be joint. *Ransom*, 500 S.W.2d at 588. There was no evidence offered at trial supporting a non-incriminating explanation for defendant's possession of an automobile that the owner had not authorized him to operate.

Further, there was evidence that the property was recently stolen. The Missouri Supreme Court has adopted the C.J.S. description of the proper test of recency; that is " 'whether the time lapse between the theft and accused's possession of the property is sufficiently short, given the circumstances of the case, to preclude the possibility of a transfer of the stolen property from the thief to an innocent party.' 76 C.J.S. Receiving Stolen Goods, sec. 27 (1994)." *Langdon*, 110 S.W.3d at 814.

> What may be sufficiently recent will depend on the facts and circumstances of the particular case, including the type of property stolen, how easy it is to sell, and how likely it is to be sold innocently. *See, e.g.,* [*State v.*] *Sours*, 633 S.W.2d [255] at 258–59 [ (Mo.App.1982) ] (possession of pistol stolen 8 days earlier, later sold for half its value and other suspicious comments sufficient to meet standard); *State v. Hedrick*, 499 S.W.2d 583 (Mo.App. W.D.1973) (19 hours sufficiently recent); and *State v. Denison*, 352 Mo. 572, 178 S.W.2d 449, 453 (Mo. 1944) (possession of adding machine two months after larceny was not too remote to permit inference where adding machines are not readily marketable and defendant was not in business of possessing them).

*Id.* Here, a stolen automobile is not easy to sell or likely to be sold innocently without title and other paperwork. The fact that the owner had not yet discovered the theft of the Blazer before defendant was stopped while driving it is evidence that the Blazer's theft had been recent.

As we have stated, even if the unexplained possession of recently stolen property is not sufficient in itself to give rise to an inference of guilt, it is a circumstance that the jury is entitled to consider togeth-

er with the other facts and circumstances of the case. *Langdon,* 110 S.W.3d at 813. In this case, there were other facts and circumstances supporting an inference of knowledge. Defendant attempted to conceal his identity from police by claiming that he had no identification and then by fleeing when he was asked for his name and other identifying information. Instead of following police instructions to get into the police car, defendant ran from the police and hid in a wooded area, avoiding arrest. In addition, there were circumstances that could have put defendant on notice that the Blazer was stolen: the mismatched dealer and personal license plates, which were plainly visible and would put the driver on notice that at least one did not belong to the car, and the absence of an insurance card for the vehicle, which defendant did not even attempt to produce when asked.

There was sufficient circumstantial evidence from which a reasonable juror could infer that defendant knowingly operated the vehicle without the owner's consent. *Hinkle,* 987 S.W.2d at 12; *Ransom,* 500 S.W.2d at 587 (citing *State v. Crawley,* 478 S.W.2d 344, 345 (Mo.1972)). The trial court did not err in determining that the state made a submissible case. Point eight is denied.

The judgment of the trial court is reversed and remanded.

LAWRENCE E. MOONEY and BOOKER T. SHAW, JJ., concur.