

# In the Missouri Court of Appeals
## Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED101027 |
| | ) | |
| Respondent, | ) | Appeal from the City of St. Louis |
| | ) | Circuit Court |
| vs. | ) | |
| | ) | Honorable John J. Riley |
| WILLIE RANDLE, | ) | |
| | ) | Filed: March 10, 2015 |
| Appellant. | ) | |

### Introduction

Willie Randle (Defendant) appeals the trial court's judgment entered on his convictions following a bench trial for first-degree tampering with a motor vehicle, resisting a lawful stop, and first-degree endangering the welfare of a child. On appeal, Defendant challenges the sufficiency of the evidence to support his felony convictions. We affirm.

### Factual Background

Viewed in the light most favorable to the State, the evidence adduced at trial shows that between 5 and 6 p.m., on December 5, 2012, Detective Jason Brandhorst, of the St. Louis Metropolitan Police Department's Anti-Crime Task Force, was investigating a vehicle of interest in a residential neighborhood when he observed a silver 1990s model Pontiac Grand Am with damage to the driver's side and a temporary Illinois license plate drive past his location. Earlier

in the day, Detective Brandhorst had received information that a vehicle matching this description had been recently stolen and that Defendant was reportedly operating the vehicle. The detective also learned Defendant had outstanding warrants, including a parole violation. After observing the Grand Am drive past his location, Detective Brandhorst radioed Detectives Joseph Bell and Orlando Morrison, who were patrolling the area in an unmarked patrol car, advising them to watch for the silver Grand Am, which was heading their way.

Shortly thereafter, the detectives observed a silver Pontiac Grand Am approaching their location and began surveillance on the vehicle. While the detectives were stopped at an intersection waiting for the light to change, Defendant drove up alongside their patrol car. At the time, Detectives Bell and Morrison were both wearing tactical vests with "big velcro straps" and "POLICE" clearly designated in large, reflective letters on the front and back of the vests. Detective Bell looked over and made eye contact with Defendant, whom the detective recognized from a police photograph. When Defendant looked over and saw the detectives, he appeared to recognize them as police officers.[1] As soon as Defendant saw the officers, he ran the red light and sped off in the stolen vehicle at a high rate of speed.

As the detectives followed in pursuit, they observed Defendant driving erratically, at excessive speeds, running several stop signs, and weaving in and out of traffic. At one point, Defendant violently swerved, barely avoiding a collision with another car. Due to Defendant's high speed and erratic driving, the detectives were unable to consistently maintain visual contact with the Grand Am and air support was called in to assist. As defendant continued to flee, the detectives had to deploy spike strips along the roadway in an attempt to force the vehicle to a stop. After crossing over the spike strips, however, Defendant accelerated the vehicle to an even

---

[1] At trial, Defendant testified that he had previous dealings with these detectives and had fled from them on a prior occasion. He also acknowledged that he had an outstanding warrant.

greater speed and continued to evade police, despite having deflated tires. Just before reaching I-70 highway, Defendant stopped and exited the vehicle and began running towards the highway. After Defendant abandoned the vehicle, officers noticed a small child (later identified as Defendant's four-year-old son, "D.R.") exit the passenger side of the car.[2] While one of the officers secured the child, Detective Bell began chasing Defendant.

Around the same time, Detective Robert Simons arrived at the scene and joined in the foot chase. As he was chasing Defendant, Detective Simons yelled, "Police, Stop, you're under arrest." Defendant turned to look at the officer but continued running towards the highway. When he reached the highway, Defendant began crossing busy lanes of traffic and dodging cars, causing drivers to slam on their brakes. Around this time, Officer Michael Roth, with the canine unit, arrived and pulled his patrol car up to within 10 to 15 feet of Defendant. Officer Roth exited the patrol car with his canine partner and ordered Defendant to get on the ground. Defendant was apprehended and taken into custody.

Following his arrest, Defendant was charged as a prior and persistent offender with the class C felony of first-degree tampering, the class D felony of resisting a lawful stop, the class C felony of first-degree endangering the welfare of a child, and the class A misdemeanor of third-degree assault of a law enforcement officer.[3] After a bench trial, he was found guilty on all counts and sentenced to a total of seven years' imprisonment on the felony convictions and six months in a medium security institution for the misdemeanor assault conviction. On appeal, Defendant challenges the sufficiency of the evidence to support his felony convictions.

___

[2] The record indicates that the police officers were unaware that a child was in the stolen vehicle until after Defendant abandoned the car and fled on foot.

[3] Defendant was charged with assaulting a law enforcement officer after he kicked Detective Brandhorst in the leg following his arrest. Defendant does not appeal this conviction.

## Standard of Review

Appellate review of the sufficiency of the evidence in a court-tried case is based upon the same standard as in a jury-tried case. *State v. Holman*, 230 S.W.3d 77, 82 (Mo. App. S.D. 2007). Our review is limited to a determination of whether there is sufficient evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.* at 83. We accept as true all of the evidence favorable to the State, including all favorable inferences drawn from the evidence and disregard all contrary evidence and inferences. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993). "The trier of fact determines the credibility of the witnesses, and may believe all, some or none of the testimony of a witness." *State v. Burse*, 231 S.W.3d 247, 251 (Mo. App. E.D. 2007) (citation omitted). We do not reweigh the evidence, but only determine if the trial court's judgment is supported by sufficient evidence. *Id*.

## Discussion

### *Point I: First-Degree Tampering with a Motor Vehicle*

In his first point, Defendant contends that the trial court erred in finding there was sufficient evidence to support his conviction for first-degree tampering because the State failed to prove beyond a reasonable doubt that he "knowingly" operated the Pontiac Grand Am without the consent of the owner. In response, the State counters that the evidence supported Defendant's tampering conviction because there was sufficient evidence presented at trial from which the trier of fact could infer that Defendant operated the recently stolen Pontiac Grand Am knowing that he did not have the owner's consent.

A person commits the crime of first-degree tampering with a motor vehicle if he or she knowingly operates an automobile without the consent of the owner. Section 569.080.1(2),

RSMo.[4]   Defendant does not dispute that he operated a recently stolen vehicle without the owner's consent.  Instead, Defendant claims the evidence was insufficient to prove that he *knew* that he did not have the owner's consent to operate the vehicle.

"Direct proof of a required mental state is seldom available and such intent is usually inferred from circumstantial evidence." *State v. Holleran*, 197 S.W.3d 603, 611 (Mo. App. E.D. 2006) (citations omitted).   A defendant's mental state may be determined from evidence of his conduct before the act, from the act itself, and from his subsequent conduct.   *Id*. (citation omitted). "[A] defendant's presence, opportunity, companionship, conduct, and flight are circumstances from which his purpose to commit a crime can be inferred." *Id*.  (citation omitted). "The exclusive and unexplained possession of recently stolen property is a circumstance a [trier of fact] can consider, along with other facts and circumstances, to draw the inference that the possessor of stolen property knew the property was stolen." *Id*.   For instance, consciousness of guilt may be inferred where the evidence shows that a police officer observed the defendant operating a stolen vehicle and the defendant fled after making contact with the officer.  *See id*.

In support of his argument that the evidence was insufficient to show that he possessed the requisite intent necessary to support his tampering conviction, Defendant claims there was no evidence to show that the Grand Am had been broken into or that anything besides the vehicle's key was used to operate the ignition.  Defendant also asserts that there was no evidence to show that he knew the vehicle had been taken from its previous location without the owner's consent and that the State's evidence merely established that he was driving a stolen vehicle.

Defendant relies on *In the Interest of V.L.P.*, 947 S.W.2d 546 (Mo. App. W.D. 1997).  In *V.L.P.*, a juvenile defendant was arrested after police saw him driving a vehicle that had been reported stolen.  947 S.W.2d at 547.  The juvenile testified that he had never driven the car

---

[4] All statutory references are to RSMo (Supp. 2012), unless otherwise indicated.

before the day he was stopped and that he was merely driving a friend to run errands at the request of his cousin who he believed had legitimate possession of the car and the keys. *Id.* In determining that the evidence did not support the juvenile's tampering conviction, the Western District concluded that the evidence was insufficient to establish the requisite criminal intent. *Id.* at 548. In reaching this conclusion, the Court noted that, "simply driving a stolen automobile, without more, does not establish a sufficient factual basis to allow an inference of guilt to convict." *Id.* at 547-48. The Court also found that there was no factual basis from which to infer that the vehicle had been recently stolen because it was unclear when the vehicle was stolen, especially given that the vehicle had been leased from a car rental company nearly five months before the defendant was arrested. *See id.* at 548. The Court also distinguished the facts and circumstances of the case from others holding that a defendant's exclusive and unexplained possession of a recently stolen vehicle authorizes a permissible inference that the accused had knowledge that the vehicle in his possession was stolen. *Id.*

The *V.L.P.* case is readily distinguishable from the instant case. In that case, there was no evidence to establish when the vehicle was stolen. Here, it is undisputed that the vehicle Defendant was operating on the day of his arrest was recently stolen. The record shows that the Grand Am was stolen on November 24, 2012, and that Defendant was arrested for driving it on December 5, 2012, less than two weeks later. In addition, Defendant had exclusive possession of the Grand Am and its keys[5] when he was operating the vehicle. He also provided no explanation for possessing the stolen vehicle other than testifying that he "rented" the car from the owner. This testimony was directly refuted by the car owner who testified that he had never seen Defendant before the trial and did not give Defendant consent to operate his Grand Am.

---

[5] Following his arrest, Defendant told the police that he threw the vehicle's keys on the ground after abandoning the vehicle and fleeing on foot. However, despite police efforts to locate them, the keys were never found.

Defendant's argument also ignores our standard of review. We view the evidence and all reasonable inferences in the light most favorable to the State and disregard any contrary evidence and inferences. *See State v. Massa*, 410 S.W.3d 645, 659 (Mo. App. S.D. 2013) (citation omitted). The trier of fact may accept or reject an accused's explanation for operating a stolen vehicle, s*ee State v. Ransom*, 500 S.W.2d 585, 588 (Mo. App. E.D. 1973), and may also consider the defendant's dishonesty regarding any material facts as evidence of his guilt. *See State v. Jackson*, 419 S.W.3d 850, 857 (Mo. App. S.D. 2013) (citations and quotation omitted).

Based on the totality of the facts and circumstances, including Defendant's exclusive possession of the recently stolen Grand Am and his flight from police while driving the stolen vehicle, there was sufficient evidence from which a reasonable trier of fact could find that Defendant knowingly operated the stolen Grand Am without the owner's consent. *See, e.g., Holleran*, 197 S.W.3d at 612-13; *see also State v. Hinkle*, 987 S.W. 2d 11, 12 (Mo. App. E.D. 1999). The trial court was free to reject Defendant's proffered explanation for his possession of the vehicle as further evidence of his guilt. *See Ransom*, 500 S.W.2d at 588; *Jackson*, 419 S.W.3d at 857. The trial court did not err in finding there was sufficient evidence to support Defendant's first-degree tampering conviction. Point I is denied.

### Point II:  Resisting a Lawful Stop

In his second point, Defendant contends that the trial court erred in finding there was sufficient evidence to support his conviction for resisting a lawful stop by fleeing from the police. In response, the State asserts that the evidence was sufficient to support Defendant's conviction for resisting a lawful stop by fleeing because the evidence established that Defendant knowingly fled from the police and created a substantial risk of harm to others by leading the

7

police on a high-speed car chase, committing numerous traffic violations, and nearly causing a collision.

Section 575.150 provides, in pertinent part:

1. A person commits the crime of resisting . . . [a] stop if, knowing that a law enforcement officer is . . . attempting to lawfully . . . stop an individual or vehicle, or the person reasonably should know that a law enforcement officer is . . . attempting to . . . lawfully stop an individual or vehicle, for the purpose of preventing the officer from effecting the . . . stop . . . the person: (1) [r]esists the . . . stop . . . of such person by . . . fleeing from such officer[.]

\*               \*               \*

5. Resisting [a] . . . stop by fleeing in such a manner that the person fleeing creates a substantial risk of serious physical injury or death to any person is a class D felony[.]

Count II of the substitute information in lieu of indictment charged Defendant with committing the class D felony of resisting a lawful stop by fleeing from law enforcement officers who "were attempting to make a lawful stop of . . . [Defendant], and . . . [Defendant] knew or reasonably should have known that the officers were making a lawful stop, and, for the purpose of preventing the officers from effecting the stop, resisted the stop . . . by fleeing from the officers and . . . [Defendant] fled in such a manner that created a substantial risk of serious physical injury or death to other persons in that [Defendant] operated the vehicle at . . . excessive speeds, violating numerous traffic laws, and had a near collision with another motor vehicle."

Thus, the State was required to prove that Defendant knew or reasonably should have known that law enforcement officers were attempting to make a lawful stop and that Defendant resisted the stop by fleeing from the officers, in violation of § 575.150.1. *See, e.g. State v. Burton*, 370 S.W.3d 926, 929 (Mo. App. E.D. 2012). Having charged Defendant with the class D felony offense of resisting a lawful stop pursuant to § 575.150.5, the State was also required to show that while fleeing from police, Defendant's actions created a substantial risk of serious

injury or death to others. Defendant does not dispute that he fled from police while driving the stolen Grand Am. Nor does he challenge the sufficiency of the evidence establishing that he fled in such a manner that created a substantial risk of serious physical injury or death to other persons.[6] Instead, Defendant asserts that the evidence was insufficient to show that he knew or reasonably should have known that the police were pursuing him in an attempt to make a lawful stop.[7]

As noted, the record shows that while driving the stolen vehicle, Defendant pulled up alongside Detectives Bell and Morrison at the stop light, made eye contact with Detective Bell, then immediately ran the red light and sped away at a high rate of speed. As Defendant continued to flee, he drove erratically, at excessive speeds, ran several stop signs, wove in and out of traffic, and violently swerved, barely avoiding a collision. In addition, rather than stopping or even slowing down after crossing over the spike strips and deflating the vehicle's tires, Defendant continued to evade police. The record further shows that rather than submitting to law enforcement when he reached a dead-end street, Defendant abandoned the stolen vehicle, leaving his young son in the car, and led the officers on a foot chase towards the highway. Moreover, when Officer Simons ordered Defendant to stop and advised that he was under arrest, Defendant continued running in the opposite direction. It was only after Officer Roth and his canine partner arrived at the scene and ordered Defendant to get on the ground that officers were finally able to apprehend him.

---

[6]Although referenced in his point relied on, Defendant does not address the "substantial risk of harm" element of this offense in his argument section under Point II. As such, that portion of the point is deemed abandoned. *See State v. Charlton*, 114 S.W.3d 378, 386 (Mo. App. S.D. 2003).

[7] Defendant's assertions that the evidence was insufficient because the State failed to establish the stolen vehicle's "actual speed" during the car chase or that he knew the exact basis for the stop are without merit. Neither of these alleged omissions are required elements necessary to support a conviction for resisting a lawful stop by fleeing under § 575.150.

Given these facts and circumstances, the trial court could reasonably infer that Defendant knew or should have known that the officers were pursuing him in an attempt to facilitate a lawful stop, and that he fled to avoid being apprehended. *See, e.g., State v. Jones*, 296 S.W.3d 506, 510 (Mo. App. E.D. 2009). In addition, there was ample evidence from which the trier of fact could find that in his attempt to evade police, Defendant operated the stolen vehicle in a manner that created a substantial risk of harm to his young son in the car as well as any others on the road that evening. The trial court did not err by finding the evidence sufficient to support Defendant's conviction for resisting a lawful stop by fleeing. Point II is denied.

### *Point III: First-Degree Endangering the Welfare of a Child*

In his third and final point, Defendant contends that the trial court erred in finding there was sufficient evidence to support his conviction of first-degree endangering the welfare of a child because the evidence did not demonstrate that he knowingly acted in a manner that created a substantial risk to his son, D.R.'s life, body, or health. In response, the State counters that there was sufficient evidence to support Defendant's child endangerment conviction because the evidence at trial established that Defendant led the police on a high-speed car chase while driving erratically, committing numerous traffic violations, and nearly colliding with another vehicle while D.R. was in the car without a secured seat belt.

A person commits the crime of endangering the welfare of a child in the first degree if he or she "knowingly acts in a manner that creates a substantial risk to the life, body, or health of a child less than seventeen years old." § 568.045.1(1). In the context of the child endangerment statute, *substantial* means "not seeming or imaginary" and *risk* means "the possibility of loss, injury, disadvantage or destruction." *State v. Fowler*, 435 S.W.3d 90, 94 (Mo. App. S.D. 2014) (citations and quotations omitted). While there must be an actual, as opposed to a potential risk,

10

to the life, body or health of a child, § 568.045.1(1) does not require the State to prove that the child sustained injuries to establish that the child's welfare was endangered. *See Hopson*, 168 S.W.3d at 563. In determining whether a defendant's actions created a substantial risk to the life, body, or health of a child, we consider the totality of the circumstances from the evidence presented. *Id.*

Count III of the substitute information in lieu of indictment charged that Defendant "knowingly acted in a manner that created a substantial risk to the life, body, and health of [D.R.] . . . by operating a stolen vehicle that violated numerous traffic laws, travelled at an excessive rate of speed and nearly had a collision with another vehicle all while fleeing from the police." Defendant does not dispute that while fleeing from police, his four-year-old son, D.R., was a passenger in the stolen vehicle. Instead, Defendant argues that the evidence was insufficient to prove that his actions created a substantial risk of harm to D.R.[8] Specifically, Defendant claims the State failed to prove that his actions posed an *actual* danger to his son, as opposed to a *potential* danger, because "no accident" occurred and D.R. was not injured during the car chase. We disagree.

A similar argument was rejected by this Court in *State v. Hopson*, 168 S.W.3d 557 (Mo. App. E.D. 2005). In *Hopson*, this Court found that the defendant created an actual risk of substantial harm to his child's life, body, or health by knowingly engaging in a car chase with police and abandoning the vehicle while his eight-month-old son was in the back of the car. 168 S.W.3d at 563. In determining the evidence was sufficient to support the defendant's first-degree child endangerment conviction, this Court noted that the defendant's actions in driving

---

[8] For the same reason previously noted, Defendant's assertion that the evidence was insufficient because the State failed to establish the stolen vehicle's actual speed during the car chase is without merit. There is no requirement under § 568.045.1(1) that the State prove that Defendant operated the vehicle at a particular speed in order to establish that his actions while fleeing from police created a substantial risk of harm to his child.

11

his car at a "high rate" or "rapid rate" of speed while actively fleeing from police through a residential neighborhood, nearly colliding with pedestrians in the street, and turning the vehicle at a high speed, made it practically certain that the defendant would lose control of the vehicle and wreck, causing injury to the child in the car. *Id.* The Court found this evidence sufficient to support the defendant's child endangerment conviction because it established that in his attempt to evade police, the defendant knowingly drove his car in a manner that created a substantial risk to the life, body, or health of his son. *Id.*

Likewise, in the instant case, the record shows that in an attempt to flee from Detectives Bell and Morrison while driving the stolen Grand Am, Defendant ran a red light, led the officers on a high-speed car chase, drove erratically, ran several stop signs, dodged busy traffic, and nearly collided with another vehicle. Even after crossing over spike strips and deflating the vehicle's tires, Defendant continued to evade police with his young son in the car. These facts and circumstances amply support the trial court's determination that Defendant knowingly drove the stolen vehicle in such a manner that created a substantial risk to D.R.'s life, body, or health. In fact, given that D.R. was positioned in the front seat of the vehicle without a seatbelt during the high-speed car chase and near-accident, the substantial risk of harm to which D.R. was exposed was arguably even greater than the substantial risk depicted in *Hopson*, where the child was secured in a car safety seat in the back seat of the vehicle. Also, contrary to Defendant's assertions, the State was not required to prove that D.R. was injured during the car chase or that an accident occurred. *See Hopson*, 168 S.W.3d at 563. The trial court did not err in finding there was sufficient evidence to support Defendant's conviction for first-degree child endangerment. Point III is denied.

12

**Conclusion**

For the foregoing reasons, the trial court's judgment is affirmed.

_____
Philip M. Hess, Judge

Sherri B. Sullivan, P.J. and
Mary K. Hoff, J. concur.

13