

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI, )
 )
    Plaintiff-Respondent, )
 )
v. ) No. SD37886
 ) Filed: December 4, 2023
MICHAEL JACOB SMITH, )
 )
    Defendant-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF CEDAR COUNTY

Honorable David R. Munton, Circuit Judge

**AFFIRMED**

Following a jury trial, Michael Smith (Defendant) appeals from his conviction for the class A misdemeanor of resisting a lawful stop. *See* 575.150.[1] Presenting one point on appeal, Defendant challenges the sufficiency of the evidence to support his conviction. Finding no merit in his point, we affirm.

In reviewing for sufficiency of the evidence, our review is on the merits, regardless of whether that issue was raised at trial. ***State v. Claycomb***, 470 S.W.3d 358, 361-62 (Mo. banc 2015); *see **State v. Hilleman***, 634 S.W.3d 709, 712 (Mo. App. 2021). "Appellate review of sufficiency of the evidence is limited to whether the State has introduced sufficient

---

[1] All statutory references are to RSMo (2016).

evidence from which a reasonable juror could have found each element of the crime beyond a reasonable doubt." ***State v. Hunt***, 451 S.W.3d 251, 257 (Mo. banc 2014); *see* ***State v. Lammers***, 479 S.W.3d 624, 632 (Mo. banc 2016). "This is not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder 'could have found the essential elements of the crime beyond a reasonable doubt.'" ***State v. Nash***, 339 S.W.3d 500, 509 (Mo. banc 2011); ***State v. Bateman***, 318 S.W.3d 681, 687 (Mo. banc 2010). We consider all evidence in the light most favorable to the verdict and grant the State all reasonable inferences. ***Lammers***, 479 S.W.3d at 632. Contrary evidence and inferences are disregarded. ***Id***. "We defer to the jurors' superior position to weigh and value the evidence, determine the witnesses' credibility and resolve any inconsistencies in their testimony." ***State v. Lopez-McCurdy***, 266 S.W.3d 874, 876 (Mo. App. 2008). Viewed from this perspective, the following evidence was adduced at trial.

Around 3 a.m. on June 11, 2020, Officer Frank Brumfield of the City of El Dorado Springs Police Department was on patrol duty. He noticed a Toyota Highlander (Highlander) driving in a manner that seemed "odd." Specifically, he watched as the Highlander "slowly crept" up the far-left turn lane of a road and stopped about 100 feet before the intersection. According to the officer, the Highlander then suddenly turned right, cutting across two lanes of traffic to do so.

Officer Brumfield decided to stop the Highlander for this traffic violation. He turned on his red lights and activated his siren to initiate a traffic stop. The Highlander responded by accelerating away from the officer, and he gave pursuit. During the middle of the pursuit, the Highlander "suddenly slammed on [the] brakes[,]" which caused the officer to do so as

2

well to avoid a collision. The Highlander then went into reverse and came back toward the officer, who had to veer into the oncoming traffic lane to avoid being hit.

The Highlander eventually backed into a ditch. Defendant then exited the vehicle and fled on foot. Officer Brumfield followed Defendant in his patrol car as Defendant fled. Defendant eventually came up to a large fence, at which point he turned around and headed back in the direction of the approaching officer. Officer Brumfield exited his patrol car, drew his taser, and told Defendant to stop and put his hands behind his back. Defendant started arguing with the officer and did not initially comply. Officer Brumfield eventually had to use the taser on Defendant several times to get him to stop struggling and stay on the ground. The officer finally was able to get Defendant's hands behind his back and place Defendant in handcuffs.

Defendant was originally charged with the following three offenses: the class B felony of attempted assault in the second degree, in violation of § 565.052 (Count 1); the class E felony of resisting arrest, in violation of § 575.150 (Count 2), and the class A misdemeanor of driving while intoxicated (DWI) in violation of § 577.010 (Count 3). With respect to Counts 1 and 3, the jury found Defendant not guilty of attempted assault as charged in Count 1, but guilty of DWI as charged in Count 3.[2]

With respect to the felony of resisting arrest charged in Count 2, the information alleged that Defendant resisted by "creating a substantial risk of serious physical injury or death":

> Officer Brumfield, a law enforcement officer, was making a stop of [Defendant] for a traffic violation, and [Defendant] knew or reasonably should have known that the officer was making a stop, and, for the purpose of preventing the officer from effecting the stop, resisted the arrest of

---

[2] Defendant is not appealing his conviction for the DWI offense under Count 3. He appeals only his conviction under Count 2.

3

> [Defendant] by *creating a substantial risk of serious physical injury or death* by driving at a speed in excess of 85 MPH and attempting to ram the patrol vehicle of Officer Brumfield.

(Emphasis added.) The jury did not find Defendant resisted in such manner, and therefore did not find him guilty of the felony of resisting arrest. Instead, the jury found Defendant guilty of the lesser-included misdemeanor of "resisting a stop by fleeing" from the officer. This appeal followed.

Defendant's single point on appeal challenges the sufficiency of the evidence to support his conviction for the class A misdemeanor of resisting a lawful stop. According to Defendant, "the State failed to provide sufficient evidence to prove that, when [Defendant] fled from the officer and backed his vehicle towards the officer's vehicle, it was actually [Defendant's] purpose to prevent the officer from completing the stop of his vehicle." Defendant points to "undisputed evidence" that his aunt "lived across the street from where he backed up and attempted to turn around before he accidently backed up his car into the ditch" and argues that while his "actions may have had the effect of preventing the officer's stop, there was simply no evidence to show that it was [Defendant's] 'conscious object' to prevent the stop." We disagree.

Section 575.150 sets out the elements for the offenses of resisting an arrest, detention, or stop. Insofar as relevant here, this statute states that resisting a stop may be committed by "fleeing":

> 1. A person commits the offense of resisting or interfering with arrest, detention, or stop if he or she knows or reasonably should know that a law enforcement officer is making an arrest or attempting to lawfully detain or stop an individual or vehicle, and **for the purpose of preventing the officer from effecting the arrest, stop** or detention, he or she:

4

(1) Resists the arrest, stop or detention of such person by using or threatening the use of violence or physical force or **by fleeing from such officer**[.]

§ 575.150.1(1) (emphasis added).[3]  Resisting a stop by fleeing "is a class A misdemeanor, unless the person fleeing creates a substantial risk of serious physical injury or death to any person, in which case it is a class E felony."  § 575.150.5.  Thus, because the jury found that Defendant did not create a substantial risk of serious physical injury as charged, the jury needed only find that Defendant acted "for the purpose of preventing the officer from effecting" the stop "by fleeing from such officer[.]"  § 575.150.1(1); *see State v. Pitiya*, 623 S.W.3d 217, 221 (Mo. App. 2021).

Here, ample evidence supports a finding that Defendant acted with the purpose of preventing the stop by fleeing.  After Officer Brumfield turned on his red lights and activated his siren to initiate a traffic stop, Defendant responded by:  (1) accelerating his vehicle *away* from the officer; (2) slamming on the brakes during the ensuing pursuit, causing the officer to do so as well to avoid a collision; (3) reversing and backing up towards the officer, who had to veer into the oncoming traffic lane to avoid being hit; (4) eventually backing into a ditch; (5) exiting the vehicle and fleeing on foot; and (6) refusing to cooperate and put his hands behind his back, requiring the officer to tase him several times to get him to comply with instructions and to finally stop him.  Contrary to Defendant's argument, the evidence shows Defendant's actions were in direct response to Officer Brumfield's activation of his lights and siren to initiate a traffic stop.  Given these facts and circumstances, a juror could reasonably infer that Defendant knew or should have known that the officer was pursuing

---

[3]  With respect to acting with "purpose," § 562.016.2 provides that a person acts "with purpose, with respect to his or her conduct or to a result thereof when it is his or her conscious object to engage in that conduct or to cause that result."  *Id*.

5

him in an attempt to facilitate a lawful stop, and that he fled to avoid being apprehended. § 575.150.1(1); *see, e.g.*, ***State v. Randle***, 456 S.W.3d 535, 541-42 (Mo. App. 2015) (sufficient evidence supporting defendant's conviction for resisting a lawful stop by fleeing includes the following actions by defendant after making eye contact with the detective: defendant immediately ran the red light; sped away at a high rate of speed; drove erratically, weaving in and out of traffic; ran several stop signs; violently swerved, barely avoiding a collision; and when he reached a dead-end street, defendant abandoned the vehicle, led the officers on a foot chase; and lastly, after being ordered to stop and advised that he was under arrest, defendant continued running in the opposite direction until finally apprehended by another officer and his canine partner).

We also reject Defendant's argument, citing ***State v. Ajak***, 543 S.W.3d 43 (Mo. banc 2018), that because Defendant was charged with actions while driving (i.e., speeding and attempting to ram the patrol vehicle), his actions *after* Defendant left his vehicle "are irrelevant in determining whether he resisted Officer Brumfield's initial attempts to stop him, because … the stop had already been completed at that point." That argument fails for two reasons.

First, Defendant's actions while fleeing in his vehicle alone are sufficient to support resisting a lawful stop by fleeing. *See, e.g.*, ***Pitiya***, 623 S.W.3d at 221 (evidence that defendant was "fleeing at high rates of speed" in his vehicle sufficient to support charge that defendant was fleeing the officer attempting the stop).

Second, Defendant's actions of resistance while driving and on foot were continuous until he was finally tased and handcuffed, unlike ***Ajak***, which is factually distinguishable. In ***Ajak***, the defendant had been restrained by officers and placed under arrest in a kitchen. ***Ajak***, 543 S.W.3d at 50-51. Later, while being walked to the police vehicle, he "could not

6

have had the specific purpose of preventing an arrest" because "his arrest had been previously effected when he was actually restrained by officers and under their control in the kitchen. He was already under arrest and in custody when his alleged resistance occurred." *Id*. at 51. Here, unlike *Ajak*, Defendant had not been previously restrained, much less arrested. Defendant first resisted by fleeing in the Highlander, then abandoned that vehicle and continued to flee on foot until he was finally stopped. *See Randle*, 456 S.W.3d at 541-42.

Thus, the State introduced sufficient evidence from which a reasonable juror could have found, beyond a reasonable doubt, that Defendant acted with the purpose of preventing a lawful stop by fleeing. *See* § 575.150.1(1). Defendant's point is denied.

The judgment of the trial court is affirmed.


JEFFREY W. BATES, J. – OPINION AUTHOR

MARY W. SHEFFIELD, J. – CONCUR

JACK A. L. GOODMAN, C.J. – CONCUR