**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Stephen L. SEAGRAVES,
Defendant-Appellant.**

**No. 48879.**

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 17, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 28, 1985.

Irl B. Baris, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Mark A. Richardson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

CARL R. GAERTNER, Judge.

Defendant Stephen L. Seagraves was charged by indictment in Count I with the offense of assault in the first degree upon his wife and in Count II with the offense of assault in the first degree upon Gregory Genovese. After a waiver of trial by jury, the trial court found him not guilty on Count I, and on Count II, guilty of the lesser included offense of assault in the second degree. He was sentenced to three years' imprisonment, but execution of the sentence was suspended and he was granted probation.

Defendant appeals contending error in the denial of his request for a severance, in the denial of his request to bar the prosecutor from cross examining him as to Count I, and in denying his motion to reopen the evidence after his acquittal on Count I. He

also challenges the sufficiency of the evidence. We first address this latter contention.

In reviewing this court-tried case, we determine only whether there was sufficient proof from which the trial court could reasonably have found the defendant guilty and, in making that determination, we accept as true all evidence tending to prove the defendant's guilt, together with inferences favorable to the state that can reasonably be drawn therefrom, and we disregard all contrary evidence and inferences. *State v. Hood,* 680 S.W.2d 420, 423 (Mo.App.1984).

On November 22, 1982, and into the early morning hours of November 23, Gregory Genovese was engaged as a baby-sitter in the home of Paula Seagraves, defendant's estranged wife. Paula returned to the home shortly after 11:00 p.m., and between 12:30 and 1:30 a.m. the defendant arrived at the house and kicked the door open. When asked to leave he did, only to force the door open again moments later and enter with a metal bar 12 to 15 inches in length and 1 to 1½ inches in diameter in his hand. Defendant struck Genovese with the bar 8 to 10 times inside the house and 5 to 6 times outside the house, where he became unconscious. Genovese testified that as a result of this attack he suffered three broken fingers, two gashes in his head and spent two days in the hospital.

The police officer who arrived at the home shortly after the incident testified he observed the metal bar with blood on it in the front yard, the splintered front door, and blood on the front porch, front door, kitchen floor and telephone. Defendant told the officer at that time that he had gone into the house to hurt his wife and hit Genovese because the young man "got in his way."

▮ The elements of the offense of assault in the second degree as prescribed by section 565.060.1(1), RSMo.1978, are the use of a deadly weapon or dangerous instrument to knowingly cause or attempt to cause physical injury. Defendant's rather labyrinthine argument is that since the metal bar was not introduced in evidence, and since the state conceded that it was not a deadly weapon, and since there was no evidence the metal bar actually caused *serious* physical injury, there was, therefore, no evidence that it was capable of causing serious physical injury as required by § 556.061(7), RSMo.1978, the statutory definition of "dangerous instrument." Although excluded from evidence upon defendant's objection that the metal bar had not been given to him in response to his request for discovery, the object used upon the victim was adequately described as a steel or iron bar 1 to 1½ inches in diameter and 12 to 15 inches in length; "it appeared to be a weight lifting bar." We have no hesitancy in taking judicial notice of the fact that such an object, repeatedly wielded as a bludgeon to strike a victim about the head and neck until unconscious, "under the circumstances in which it is used, is readily capable of causing death or serious physical injury." § 556.061(7), RSMo.1978.

> "The essence of a dangerous instrument is the manner in which the item is used, and inasmuch as the definition refers to any instrument, article or substance, even ordinary items are included within its scope whenever they are 'readily capable of causing death or other serious physical injury.' ... Whether a particular object is a 'dangerous instrument' must be determined by its use under the circumstances."

*State v. Anderson,* 663 S.W.2d 412, 416 (Mo.App.1983), *quoting People v. Brown,* 103 Misc.2d 871, 427 N.Y.S.2d 200, 202 (1980). We also reject defendant's argument, asserted for the first time on appeal, that the failure to denominate the metal bar as a dangerous instrument in the indictment is a factor in establishing that it was not a dangerous instrument. That the state chose to use the specific phrase "metal pipe" rather than the generic "dangerous instrument" in pleading the offense is of no moment, especially in the absence of any request by the defendant for a bill of particulars. *See State v. Mace,* 665 S.W.2d 655, 659 (Mo.App.1984). There is ample

evidence to support a finding, implicit in the trial court's judgment, that the metal bar was a dangerous instrument used to knowingly cause physical injury.

Defendant also contends that the trial court abused its discretion in denying his motion to sever the two counts or to limit his cross-examination to the facts of Count II. Prior to the commencement of the trial, defendant filed what was denominated as a "motion to elect." That motion is not before us, but the trial court considered it as a motion to sever counts and denied it. After his wife refused to testify, the defendant renewed the motion and also sought an order limiting his cross-examination to the facts relating to Count II. In his brief he states his position:

> But defendant was faced with the dilemma that if he testified concerning Count II and became subject to cross-examination by the prosecutor on the events relating to his wife and Count I, he might be forced to give evidence which could have caused the court to find support for a conviction on Count I.

Both motions were denied and defendant elected not to testify. On appeal he argues that he was thereby deprived "of his constitutional rights to testify and against 'self-incrimination.'" After the trial court entered its judgment of acquittal on Count I, defendant, by post-trial motion, sought leave to reopen the case so that he might be heard to testify regarding Count II. This also was denied.

Defendant concedes the joinder of the two charges was not improper under Rule 23.05 as a matter of pleading. He argues that since he was prejudiced by the joint trial of the two charges, it was an abuse of discretion to deny his motions. He relies upon a sentence taken from the per curiam opinion in *State v. Williamson*, 668 S.W.2d 597, 600 (Mo.App.1984):

> A defendant may be prejudiced when he has made a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other.

This statement is pure obiter dicta as the court in *Williamson* based its decision upon the failure of the defendant to allege or adduce facts showing prejudice. *Id.* Moreover, the Missouri Supreme Court has indicated a contrary approach to the resolution of tension between two different Constitutional rights. In *State v. Williams*, 603 S.W.2d 562 (Mo.1980), our Supreme Court quoted with approval the language of *McGautha v. California*, 402 U.S. 183, 215, 91 S.Ct. 1454, 1471, 28 L.Ed.2d 711, 731 (1971):

> where it was stated that it was not "overly harsh" in the determination of whether to waive the privilege against self-incrimination to require the defendant to "take into account the matter which may be brought out on cross-examination." .... "[I]t is not thought inconsistent with the enlightened administration of criminal justice to require the defendant to weigh such pros and cons in deciding whether to testify."

*Williams*, 603 S.W.2d at 568–69. Moreover, the privilege against self-incrimination as protected by the 5th Amendment to the United States Constitution and by Article I § 19 of the Missouri Constitution, is that no person shall be "compelled" to be a witness or to testify against himself in a criminal case. As stated in *McGautha:*

> The criminal process, like the rest of the legal system, is replete with situations requiring "the making of difficult judgments" as to which course to follow. (citation omitted). Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose.
>
> . . . .
>
> It is not contended, nor could it be successfully, that the mere force of evidence is compulsion of the sort forbidden by the privilege. (citation omitted). It does no violence to the privilege that a person's choice to testify in his own behalf may open the door to otherwise inadmis-

sible evidence which is damaging to his case. (citation omitted).

402 U.S. at 213, 91 S.Ct. at 1470, 28 L.Ed.2d at 729–730.

 Furthermore, since Rule 23.05 authorizes joinder of offenses only where they are based upon the same act or acts that are a part of the transaction or which constitute parts of a common scheme or plan, as a general rule the evidence relating to each offense would be admissible in each case even if tried separately. *State v. Williams*, 603 S.W.2d at 568. Thus, in the instant case, if the severance had been granted and if defendant testified in the trial of Count II, the Genovese assault, he would be subject to cross-examination regarding the assault on his wife as that matter is relevant to his motive and intent.[1] Any possible admissions he made in such testimony could have been used against him in a subsequent trial of Count I, even without testimony from his wife, as the corpus delicti is established by other evidence. He "cannot claim prejudice because what would result in a separate trial of each offense would also result when a single trial is held of all offenses." *Id.*

 Finally, we note that neither here nor in the trial court does the defendant suggest what facts he might testify to which would benefit his defense on Count II and simultaneously incriminate him on Count I. Even under Rule 14 of the Federal Rules of Criminal Procedure and the decisions of federal courts upon which defendant relies, "it is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine ..." *United States v. Jardan*, 552 F.2d 216, 220 (8th Cir.), *cert. denied*, 433 U.S. 912, 97 S.Ct. 2982, 53 L.Ed.2d 1097 (1977), *quoting Baker v. United States*, 401 F.2d 958, 977 (D.C.Cir.1968), *aff'd after remand*, 430 F.2d 499, *cert. denied*, 400

U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970).

Rule 24.07 vests discretion in the trial court to order separate trials of jointly charged offenses. Any exercise of discretion involves a balancing of competitive interests. In the absence of factual information, at least in the form of an offer of proof, there is weight only on one side of the scale. We find no abuse of discretion.

Judgment affirmed.

PUDLOWSKI, P.J., and KAROHL, J., concur.

---

1. *See State v. Allen*, 674 S.W.2d 606, 608 (Mo. App.1984) (evidence of other crimes admissible if it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan; (5) identity of the person charged).