

# Missouri Court of Appeals
## Southern District

## In Division

STATE OF MISSOURI, )
)
    Plaintiff-Respondent, )
)
vs. ) No. SD37732
)
ROBERT C. ROST, ) **Filed: May 9, 2024**
)
    Defendant-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

The Honorable David C. Jones, Judge

**<u>AFFIRMED AND REMANDED WITH INSTRUCTIONS</u>**

Robert C. Rost appeals a Greene County Circuit Court ("trial court") judgment convicting him of unlawful use of a weapon (section 571.030), armed criminal action (section 571.015), assault in the second degree committed against a special victim (section 565.052), and unlawful possession of a firearm (section 571.070).[1] Rost asserts four claims alleging the trial court erred (Points I-III) and plainly erred (Point IV) by: (1) Denying his requests for a mistrial and for the substitution of jurors after it was discovered several jurors were commenting about the case outside of the time for jury

---

[1] All references to statutes are to RSMo 2016, including any applicable changes effective January 1, 2017, unless otherwise indicated.

1

deliberations (Point I); Denying Rost's motion to sever the tampering charge from the other charged offenses because Rost had specific reasons for testifying as to the tampering charge and to avoid testifying on the remaining charges, and he made a particularized showing of prejudice that would result from the failure to sever the charges (Point II); (3) Denying Rost's motion for judgment of acquittal at the close of all evidence because there was insufficient evidence to prove he knowingly possessed a motor vehicle without the consent of the owner (Count III); and (4) Entering a judgment convicting him of unlawful possession of a firearm under Count IV when the jury had actually found Rost guilty of tampering in the first degree (section 569.080). We reject Rost's arguments under Points I, II, and III and affirm the trial court's judgment. However, we also determine Point IV has merit and remand to the trial court with instructions to correct the judgment *nunc pro tunc* to the extent it does not reflect the jury's verdict of guilt under Count IV for tampering in the first degree.

**Factual Background and Procedural History**

On March 23, 2017, two police officers observed a Chevrolet Silverado truck going approximately 63 miles per hour in a 40 mile per hour zone. As the officers got behind the truck, it made a sudden right turn to go south on another street. The officers caught up to the truck and activated their lights to initiate a traffic stop, but the truck did not stop. As they were following the truck, both officers observed the truck's back windows were tinted. The officers could see the silhouette of a person in the driver's seat but could not give any descriptions of the driver, and they did not see anyone in the passenger's seat. The truck turned right, then turned left onto another road, and eventually rolled to a stop.

2

Both officers exited their patrol vehicle and approached the truck. As they approached, the truck accelerated, and the officers ran backwards toward the patrol car. They then heard several gunshots coming from the direction of the truck. The officers took cover behind the trunk of their vehicle as the truck drove away.

After the truck left, one officer saw there was a hole in the patrol vehicle's front license plate that was consistent with a gunshot hole. There was also a chip on the hood consistent with a ricochet shot, another apparent gunshot hole in the driver's side "A-pillar" just above the spotlight, and a bullet hole in the bumper. Damaged projectiles were found at the base of the windshield and behind the front license plate frame, and a small fragment of what was believed to be another projectile was behind the bumper. One officer was struck by something he could not identify and suffered abrasions as a result.

Additional officers found the truck two to ten minutes later abandoned in a field approximately 1.8 miles from where the shooting occurred. The truck's hood was up, and the back glass was shattered. Officers also observed that the fuse box cover was missing and found the brake fluid reservoir cap underneath the truck. The key was in the ignition, but it appeared to have been hit, and the shift and boot had been torn up as if someone had wanted to get into the truck's wiring for the stereo and ignition.

Officers began to collect evidence from around and inside the truck. A fingerprint from Rost's left ring finger was found on the hood of the truck where one would normally place his or her hand to close and open it. A receipt from a metal recycling facility was recovered from the ground below the passenger side door. There was a prescription bottle with Rost's name in the cupholder closest to the driver's seat. Mail

with Rost's name and address was located near the VIN plate on the dashboard in front of the steering wheel. In the map pocket of the driver's door, one officer found multiple documents with Rost's name on them, including a partially completed bill of sale and a gas station receipt from March 8, 2017. In the rear driver storage compartment, there was more mail and a prescription, all with Rost's name on them, along with a receipt for a drug prescription from Walmart dated May 15, 2017. Hornady brand nine-millimeter shell casings were found on the back floor of the truck, and the same brand of ammunition was in the center arm rest console. A can of black spray enamel was in the back seat, and several areas of the truck had been painted black over their original color.

Police located and arrested Rost on April 14, 2017, and took him in for an interview at the Greene County Jail. Rost initially denied having driven the truck but eventually admitted he had. He also admitted the medication found in the truck was his antibiotic and that the Walmart receipt was for that same medication. Rost claimed he met someone named "Eric" through an unidentified "someone else" and that Eric brought the truck to Rost to install a stereo system. He did not know Eric's last name, but Rost claimed he checked the truck's VIN and that it had not come back as stolen. Rost further denied being in the truck on March 23, 2017, or shooting anybody on the day in question. According to Rost, he was at his father's probation and parole appointment on that day at 11:25 a.m.

The State charged Rost with unlawful use of a weapon (Count I), armed criminal action (Count II), assault in the second degree (Count III), tampering in the first degree

4

(Count IV), unlawful possession of a firearm (Count V), and resisting a lawful stop (Count VI).  The case was tried before a jury on Counts I through IV.[2]

At trial, the detective who interviewed Rost in jail testified that Rost's asserted alibi of being at the probation and parole office did not matter because, even if Rost was at the office at 11:25 a.m., the shooting occurred at 10:47 a.m.  The owner of the truck testified his truck was stolen sometime overnight between February 18 and 19, 2017, from a hotel parking lot.  When he woke up at the hotel, the truck was not there, and he never found the keys for the truck.  The owner identified the truck the police found as his truck from a photograph, but he noted the truck's mesh grill and bumpers had been spray-painted black, which he had not done.  The stereo equipment that the owner installed was also gone when the truck was recovered.  The owner further testified he had never met Rost before trial, and he never gave Rost permission to use, operate, or drive the truck.

A resident in the area of the shooting testified he had just backed into his driveway when the officers stopped the truck in front of his house.  The resident said the

---

[2] The trial court granted Rost's motion to sever Counts V and VI from the remaining counts pursuant to Rule 24.07 on September 20, 2019, and the State orally dismissed Counts V and VI on September 16, 2022.  The State later formalized its dismissal of Counts V and VI through a dismissal letter filed on January 29, 2024, and the trial court acknowledged the dismissal of Counts V and VI through a docket entry dated February 6, 2024.  A criminal defendant may only appeal following a final judgment, and a judgment imposing a sentence and resolving less than all charges in a case is not a final judgment for purposes of appeal.  *State v. Waters*, 597 S.W.3d 185, 187-88 (Mo. banc 2020).  Because Counts V and VI are no longer pending against Rost, the judgment as to Counts I, II, III, and IV is a final judgment.  *See id.* at 189 ("A judgment of conviction is not final so long as any count in an indictment or information remains pending before the circuit court.").  This Court may therefore review Rost's appeal.  This Court will address the severance of the counts against Rost in full in its analysis of Rost's Point II.  Further, all rule references are to Missouri Court Rules (2024), unless otherwise indicated.

truck "took off" as the officers approached it, and he heard gunshots when the truck got past his vehicle. The truck's back glass started coming out, and the resident could see a blue flame associated with gunfire coming from within the truck. The resident saw a driver in the truck but gave no identifying features at trial and testified he did not see anyone else in the truck.

C.F. and his girlfriend, K.C., testified that on March 22, 2017, the day before the shooting, Rost picked them up in the truck and drove them to a metal recycling facility. This metal recycling facility was the same one named in the receipt police later found next to the abandoned truck. Rost stayed inside the truck while K.C. went inside the facility to complete the transaction. Afterwards, Rost returned C.F. and K.C. to where he had picked them up, and C.F. and K.C. both confirmed they were not in the truck on the day of the shooting.

The State then played a surveillance video recording from a gas station for the jury along with a recording of a phone call between Rost and his father while Rost was in jail. The surveillance video from the gas station was dated March 8, 2017, 17 days after the owner of the truck discovered his truck was stolen. It showed Rost driving the truck and making a transaction in the gas station. The recorded jail phone call was dated April 25, 2017. Rost stated during the call that his tampering charge was for "that truck." When asked by his father, "Which truck[,]" Rost replied, "The truck. . . . Which one you think?" Rost also said he "need[ed] someone to go up there and take that charge for [him], someone that ain't [sic] never been in trouble" because he or she would get a "slap on the hand and a fine."

6

The jury found Rost guilty of unlawful use of a weapon under Count I, armed criminal action under Count II, assault in the second degree of a law enforcement officer under Count III, and tampering in the first degree under Count IV. The trial court sentenced him to 15 years' imprisonment on Count I, 30 years' imprisonment on Count II, life imprisonment on Count III, and 10 years' imprisonment on Count IV. Rost's timely appeal followed. This Court will recite additional facts below as they pertain to Rost's separate points on appeal.

**Analysis**

For ease of analysis, we address Rost's points on appeal out of order.

<u>Point III: Sufficiency of the Evidence</u>

*Standard of Review*

"When considering the sufficiency of the evidence on appeal, this Court must determine whether sufficient evidence permits a reasonable juror to find guilt beyond a reasonable doubt." ***State v. Bruce***, 677 S.W.3d 867, 871 (Mo. App. S.D. 2023) (quoting ***State v. Hollowell***, 643 S.W.3d 329, 341 (Mo. banc 2022)). All evidence and reasonable inferences therefrom are viewed in the light most favorable to the verdict, while any evidence and inferences to the contrary are disregarded. ***Id.*** We defer to the trier of fact's evaluation of the evidence and "will not weigh the evidence anew." ***State v. Boyd***, 659 S.W.3d 914, 925 (Mo. banc 2023) (quoting ***State v. Alexander***, 505 S.W.3d 384, 393 (Mo. App. E.D. 2016)).

*There was Sufficient Evidence for the Jury to Find Beyond a Reasonable Doubt that Rost Knowingly Possessed the Truck Without the Owner's Consent.*

Rost argues in his third point relied on that the trial court erred by denying his motion for judgment of acquittal at the close of all evidence because there was

insufficient evidence to prove beyond a reasonable doubt he knowingly possessed the stolen truck "without a reasonable belief that he had the consent of the owner[.]" A person commits the offense of tampering in first degree if he or she "[k]nowingly receives, possesses, sells, or unlawfully operates" a motor vehicle without the consent of the owner. Section 569.080.1(2). Rost does not dispute he possessed the stolen truck or that he did so without permission. He only argues there was insufficient evidence to submit the offense of tampering in the first degree to the jury because "the evidence at most showed that he operated a vehicle that had been reported as 'stolen.'"

A conviction for tampering in the first degree requires the accused to have received, possessed, sold, or unlawfully operated the motor vehicle while "*knowing* that he [or she] did not have the owner's permission." *State v. Holleran*, 197 S.W.3d 603, 611 (Mo. App. E.D. 2006) (quoting *State v. Ransom*, 500 S.W.2d 585, 587 (Mo. App. St.L.D. 1973)). A person does not commit the offense of tampering if that person operates a motor vehicle with an honest belief he or she has permission to do so from someone whom he or she believes is in lawful possession of the vehicle. *In Int. of V.L.P.*, 947 S.W.2d 546, 547 (Mo. App. W.D. 1997). Because direct proof of one's mental state is seldom available, "a defendant's knowledge in a tampering case may be inferred from circumstantial evidence." *Holleran*, 197 S.W.3d at 611; *State v. Presberry*, 128 S.W.3d 80, 96 (Mo. App. E.D. 2003). Circumstantial evidence has the same weight as direct evidence when evaluating the sufficiency of the evidence on appellate review. *State v. Roy*, 597 S.W.3d 710, 730 (Mo. App. S.D. 2020); *State v. Plopper*, 489 S.W.3d 848, 849-50 (Mo. App. S.D. 2016).

In this case, there was sufficient circumstantial evidence for the jury to infer Rost knew the truck was stolen when he possessed it. Circumstantial evidence showing that a defendant has knowingly tampered with a motor vehicle includes the exclusive and the unexplained possession of a recently stolen vehicle. *State v. Randle*, 456 S.W.3d 535, 540 (Mo. App. E.D. 2015); *Holleran*, 197 S.W.3d at 611. Rost was seen driving the truck at a gas station as early as 17 days after the owner reported it stolen. He then exhibited continued exclusive control over the truck by taking C.F. and K.C. to a metal recycling center 16 days later on March 22, 2017, one day before the traffic stop occurred. Rost's possession of the truck during this time period was also unexplained because, though Rost said an unidentified "Eric" authorized him to possess the truck, the jury was free to find Ross's testimony not credible. *Randle*, 456 S.W. 3d at 540 ("The trier of fact may accept or reject an accused's explanation for operating a stolen vehicle . . . [.]"); *In Int. of V.L.P.*, 947 S.W.2d at 548 n.1 ("'Unexplained' is misleading. It more clearly means 'disbelieved' by the fact finder.").

Additional circumstantial evidence indicating Rost knew he possessed a stolen truck without permission included the damage to the truck's ignition and the newly painted portions of the truck. *Presberry*, 128 S.W.3d at 96 (listing "a broken steering column" as evidence of a defendant's knowledge a motor vehicle was stolen); *In Int. of V.L.P.*, 947 S.W.2d at 547 (listing the ignition being punched out with "wires hanging under the dashboard" and "the bottom part of the automobile [being] repainted" as circumstantial evidence of knowledge a vehicle is stolen). After police recovered the truck, the key in the ignition appeared to have been hit, and the shift and boot had been torn up as if someone tried to tamper with the truck's ignition wiring. Police also found a

9

can of black spray enamel in the stolen truck, and the owner confirmed he had not painted the truck's mesh grill or bumpers black. The jury could infer from these circumstances that Rost attempted to tamper with the truck's ignition and painted the truck to prevent others from recognizing it.

Moreover, the jury could also infer Rost knew the truck was stolen from his demonstrated consciousness of guilt. *See State v. Wood*, 301 S.W.3d 578, 584 (Mo App. S.D. 2010) ("Additional incriminating circumstances that will support an inference of knowledge and control include . . . consciousness of guilt . . . [.]"). Evidence of a consciousness of guilt includes a desire to conceal one's identity from authorities and fleeing from police while driving a stolen vehicle. *Randle*, 456 S.W.3d at 540; *Holleran*, 197 S.W.3d at 611-12. The jury could conclude Rost attempted to conceal his identity when he shot in the direction of the officers and fled from the traffic stop.[3] He further attempted to evade prosecution by initially denying he drove the truck in a police interview, and his statements during the phone call from jail indicate Rost knew the truck was stolen. He stated that someone needed to "take the charge" for him, specified his tampering charge was for "that truck[,]" and when asked, "Which truck", he replied, "The truck. . . . Which one you think?" These statements from the interview and phone call both evince a consciousness of guilt. *See State v. Brown*, 596 S.W.3d 193, 213-14 (Mo. App. W.D. 2020) (inferring a consciousness of guilt from the defendant's

---

[3] Though no witness identified Rost as the driver during this traffic stop, his receipts, mail, prescription, and name on the partially completed bill of sale all indicate he drove the truck. Rost's briefing acknowledges there was enough evidence for the jury to infer he drove the truck, and he does not argue there was insufficient evidence to support his conviction for unlawful use of a weapon or armed criminal action.

instructions to conceal evidence during recorded jailhouse conversations); *see also State v. Chong-Aguirre*, 413 S.W.3d 378, 387 (Mo. App. S.D. 2013) ("Consciousness of guilt can be inferred from false statements made in an attempt to deceive the police.").

Rost argues consciousness-of-guilt evidence is "weak evidence, at best" and "usually requires corroboration to be probative[.]"  This claim that circumstantial evidence requires corroboration "hark[ens] back to the circumstantial evidence rule that 'originated as a higher standard to which circumstantial evidence cases were held.'" *Plopper*, 489 S.W.3d at 853 (quoting *State v. Grim,* 854 S.W.2d 403, 405 (Mo. banc 1993)).  For over 30 years, Missouri courts have rejected the circumstantial evidence rule and treated circumstantial evidence as equivalent to direct evidence for purposes of reviewing the sufficiency of the evidence.  *Grim*, 854 S.W.2d at 406 ("We no longer need to hold circumstantial evidence cases to a higher standard than direct evidence cases.").  The jury was free to consider Rost's consciousness of guilt as circumstantial evidence of his knowledge the truck was stolen.  *See State v. Mack*, 624 S.W.3d 436, 456 (Mo. App. E.D. 2021) (finding sufficient evidence to infer the defendant's mental state from actions demonstrating his consciousness of guilt); *see also Randle*, 456 S.W.3d at 540 (holding there was sufficient evidence to infer the defendant knowingly operated a stolen vehicle based on "his flight from police while driving the stolen vehicle"); *Holleran*, 197 S.W.3d at 613 (holding there was sufficient evidence for a jury to find a defendant knowingly operated a motor vehicle without consent based on an attempt to conceal his identity and fleeing from police).

Based on the totality of facts and circumstantial evidence, there was sufficient evidence for the jury to find Rost knowingly possessed a stolen motor vehicle without

11

permission. The trial court did not err by denying his motion for judgment of acquittal at the close of all evidence. Point III is denied.

## Point I: Juror Misconduct

*Facts Relevant to Point I*

Before taking its first break during *voir dire*, the trial court admonished the venire panel per Instruction 400.04.1.[4] This instruction read, in part, as follows:

> It is the court's duty to instruct you now upon a matter about which you will be reminded at each recess or adjournment of court. Until this case is given to you to decide, you must not discuss any subject connected with the trial among yourselves, or form or express any opinion about it, and, until you are discharged as jurors, you must not talk with others about the case, or permit them to discuss it with you or in your hearing.

2017 MAI-CR 4th 400.04.1. The trial court repeatedly reminded the venire panel and selected jurors of this instruction before taking breaks throughout the trial.

After the State and Rost both presented their evidence, two jurors approached the trial court with a shared concern about comments made by other jurors during breaks of the trial. The trial court had one of the jurors wait in the hallway so it could confer with each juror separately. The first reporting juror, an alternate, stated, "almost every time there's a couple that talk about it, but just this last one . . . something about it just went over the edge." She continued, "[a]t the 1:30 break, these particular -- they [other jurors] talked about the sex offender. . . . They just wanted to tell . . . her to 'Just stop already. You're making it worse,' and . . . they're beating a dead horse." The "sex offender" referred to the State's witness who lived where Rosts's traffic stop occurred and who testified he had an unrelated conviction for statutory sodomy. As the first reporting juror

---

[4] All references to jury instructions are to Missouri Approved Instructions - Criminal ("MAI-CR 4th") (effective January 1, 2022), unless otherwise indicated.

explained, other jurors remarked, "no one was going to listen to him anyway" after the witness testified. The first reporting juror also said she overheard another conversation where jurors were "discussing the truck and whether it had a trailer or not and not, you know, checking your evidence first and beating a dead [horse] . . . ." The first reporting juror identified Jurors 3, 6, and 8 as those who were making the comments "every time" during each break.

The second reporting juror told the trial court,

> every time we go back to the jury room[,] people are talking about stuff related to the case . . . whether it be comments about the lawyers or the witnesses or general frustration about . . . this being, like, long or beating a dead horse about a certain subject . . . .

He said these comments came from just "two or three" jurors but could not identify them. When asked by Rost's trial counsel to relate the specific phrases these other jurors said, the second reporting juror replied,

> I would say that there is a generalized negative opinion towards you [Rost's trial counsel] . . . there's a thought that you're an inexperienced lawyer; that how nervous you are; that you're beating a dead horse . . . because you're asking the same questions over and over and over.

He said he was not aware of comments about any particular witnesses other than comments regarding a postal worker who testified for Rost and who went "kind of, like, just droning on about his route." The second reporting juror specified the juror discussions have "mostly been about personality type stuff" and, "[n]o one has talked about anything related to whether they think somebody is guilty or not guilty."

The trial court subsequently and individually questioned the suspected jurors who the first reporting juror identified. The first suspected juror said she "heard things here or there as far as mannerisms of various attorneys or whatever" but did not remember

13

specific conversations. She denied talking "about anything specific or anything to do with the attorneys or witnesses[,]" told the trial court she could "[a]bsolutely" set aside what she heard and only begin deliberations after all the jurors returned to the jury room to discuss the trial, and believed she could remain fair and impartial despite what she may have heard or said. The second suspected juror denied hearing anyone comment about what they thought about witnesses, and she said she had not made any comments about the believability of any witnesses. She further denied hearing any discussions about jurors not believing the State's witness who had a prior conviction for a sex offense. However, the second suspected juror admitted "some of [the jurors] had commented that some of the questions felt repetitive" and that there was "a little frustration because of that[.]" She told the trial court that she could still be fair and impartial despite what she heard or said. In response to the trial court's question as to whether she heard or made any comments about the trial, the third suspected juror said, "I think there was some reference about the trial kind of dragging on but nothing that would create any bias or any issues with determining, you know, a fair and just determination." The third suspected juror said she could be fair and impartial and set aside anything she heard or spoke of before deliberations.

After questioning the suspected jurors individually, the trial court addressed the entire jury as a panel. It asked, "Is there any member of the jury who may have overheard or spoken about witnesses or attorneys or the speed of the trial or even me that would be unable to put those thoughts and comments out of their mind at this point?" The record does not indicate any juror spoke up, and the trial court remarked, "All right. I see no hands." The trial court then asked whether any juror, "based on what has been

14

said or heard," could not be fair and impartial. The trial court again said for the record, "I see no hands raised." The trial court finally asked, "[I]s there anything at all that has transpired up to this point that would prevent you from, again, being fair and impartial and deciding the case only on the factors that I've told you and not considering anything that has transpired during breaks?" After hearing no response, it said, "I see no hands."

Rost thereafter asked for a mistrial or, alternatively, for the trial court to replace two of the suspected jurors with alternates. The trial court responded that it did "not believe that the comments, although those comments were made in violation of the Court's initial order, were done maliciously or indicated any bias on the part of any of the jurors." It denied Rost's request for a mistrial and his request to substitute jurors. The juror who first reported the alleged misconduct was an alternate who did not participate in deliberations.

*Standard of Review*

A trial court has great discretion to conduct trial proceedings, and this Court will not disturb its rulings at trial absent a showing of an abuse of discretion. *State v. Downum*, 598 S.W.3d 189, 199 (Mo. App. S.D. 2020). That discretion extends to the trial court's rulings on accusations of juror misconduct. *State v. Smith*, 944 S.W.2d 901, 921 (Mo. banc 1997) ("A trial court's ruling as to the existence of juror misconduct will not be disturbed absent a finding of abuse of discretion on review."); *State v. Dunn*, 21 S.W.3d 77, 83 (Mo. App. S.D. 2000) (saying the same). A mistrial is a drastic remedy and should only be used where the resulting prejudice cannot be remedied. *State v. Schneider*, 736 S.W.2d 392, 400 (Mo. banc 1987). A criminal defendant seeking a new trial on the basis of juror misconduct must establish that said misconduct actually occurred. *Dunn*, 21 S.W.3d at 84. Only then must the State affirmatively demonstrate that jurors were not improperly influenced or otherwise engaged in misconduct that deprived the defendant of his right to a fair and impartial jury. *Id.* Allegations of juror misconduct alone are not self-proving. *Smith*, 944 S.W.2d at 921.

**State v. Johnson**, 675 S.W.3d 620, 629 (Mo. App. S.D. 2023).

15

*The Trial Court did not Err by Overruling Rost's Requests for a Mistrial and for the Placement of Alternate Jurors.*

Rost argues in Point I that the trial court erred in overruling his "requests for a mistrial and for the placement of alternate jurors when it was revealed that several jurors were commenting and forming opinions about witnesses and one of the attorneys[.]" We note that Rost's Point I contravenes Rule 84.04 by presenting a multifarious point with two, independent claims: whether the trial court erred by overruling (1) Rost's request for a mistrial; and (2) his separate request to replace jurors with alternates. *See **State v. Hicks***, 959 S.W.2d 119, 121-23 (Mo. App. S.D. 1997) (reviewing a claim that a trial court erred by not declaring a mistrial and not substituting jurors as two separate points of error). "A point relied on violates Rule 84.04(d) when it groups together multiple, independent claims rather than a single claim of error, and a multifarious point is subject to dismissal." ***Kirk v. State***, 520 S.W.3d 443, 450 n.3 (Mo. banc 2017). Missouri court rules prohibit multifarious points to prevent misunderstandings among the parties and the reviewing court. *See **Lexow v. Boeing Co.***, 643 S.W.3d 501, 505 ("The function of [points relied on] is to give notice to the opposing party of the precise matters which must be contended with and to inform the court of the issues presented for review.") (quoting ***Wilkerson v. Prelutsky***, 943 S.W.2d 643, 647 (Mo. banc 1997)). However, even when a point on appeal is multifarious, we can review one of the improperly joined points *ex gratia*, "often the first one." ***Cedar Cnty. Comm'n v. Parson***, 661 S.W.3d 766, 772 (Mo. banc 2023). Because the State understood and responded to Rost's claims under Point I,

16

we will review Rost's claim the trial court erred by overruling his request for a mistrial *ex gratia*.[5]

Turning to the merits of Rost's first claim under Point I, we conclude the trial court did not abuse its discretion by not declaring a mistrial. After being informed jurors were discussing trial matters during breaks, contrary to Instruction 400.04.1, it individually questioned the reporting and suspected jurors. The first reporting juror said three other jurors referred to a witness as "the sex offender[,]" and those other jurors also complained about people "beating a dead horse." The second reporting juror said "two or three" other jurors were involved and echoed that the comments referred to Rost's trial counsel as "beating a dead horse." However, the second reporting juror also contradicted the first reporting juror. He was not aware of any comments about the "sex offender" witness and confirmed, "No one has talked about anything related to whether they think somebody is guilty or not guilty." All of the suspected jurors also contradicted the first reporting juror's concerns. The first suspected juror said she had not talked about any attorney or witness and said she only heard statements regarding "mannerisms of various attorneys[.]" The second suspected juror denied hearing any comments about witness credibility, although she admitted some jurors had expressed frustration about the trial being repetitive. The third suspected juror likewise did not report making any improper comments but acknowledged some jurors had discussed the trial "dragging on." Each of the suspected jurors verified they could still be fair and impartial regardless of anything

---

[5] Were we to review the second claim in Rost's Point I, that the trial court erred by overruling his request for the placement of alternate jurors, we would do so under the same abuse-of-discretion standard employed to review the first claim of error in Point I. *Hicks*, 959 S.W.2d at 123.

they said or heard.  The trial court then questioned the jury as a whole to ask whether they could disregard any improper comments about witnesses, attorneys, or the speed of trial.  None of the jurors reported any improper comments in response to the trial court's questions, and none raised their hands when asked if they could not be fair and impartial going forward.

The record of the trial court's inquiry into alleged juror misconduct reveals that jurors may have engaged in misconduct by complaining about the length of the trial and Rost's trial counsel beating a "dead horse."  However, testimony was inconsistent as to any other comments that would be considered juror misconduct.  The trial court is in the best position to evaluate evidence concerning juror misconduct and determine its "effect, if any," on the jury.  ***Shockley v. State***, 579 S.W.3d 881, 904 (Mo. banc 2019); ***State v. Buzzard***, 909 S.W.2d 370, 374 (Mo. App. S.D. 1995).  Therefore, the trial court could have found the testimony of the second reporting juror and the suspected jurors more credible than the first reporting juror.  *See **State v. Henderson***, 643 S.W.3d 545, 556 (Mo. App. W.D. 2021) ("The circuit court was entitled to reject the testimony of [], a family friend of [the defendant regarding alleged juror misconduct], without calling Juror 33 to testify again.").  As the State argued to the trial court, it is possible the first reporting juror misheard the other jurors.  While the jurors' comments about the length of the trial and Rost's trial counsel were improper, these types of comments did not concern the merits of Rost's case and do not necessarily preclude him from receiving a fair trial. *See **Shockley***, 579 S.W.3d at 904 ("While every party is entitled to a fair trial, as a practical matter, our jury system cannot guarantee every party a *perfect* trial.") (quoting ***Fleshner v. Pepose Vision Inst., P.C.***, 304 S.W.3d 81, 87 (Mo. banc 2010)); *see also*

*Dunn*, 21 S.W.3d at 84 (holding the trial court did not abuse its discretion by not declaring a mistrial after jurors did not discuss the merits of the case); *Mathis v. Jones Store Co.*, 952 S.W.2d 360, 363-65 (Mo App. W.D. 1997) (no trial court error in refusing to grant a mistrial notwithstanding one juror saying to another outside of deliberations, "I don't see what the defense can do to counter what we've already heard"). The trial court therefore had the discretion to not grant a mistrial.

Rost maintains the trial court's inquiry was insufficient to dispel the presumption of prejudice following a discovery of juror misconduct because it polled the jury as a whole and asked them to raise their hands rather than question all of the jurors individually. However, "Missouri law does not always require juror testimony once misconduct is alleged." *Henderson*, 643 S.W.3d at 555 (quoting *State v. Chambers*, 891 S.W.2d 93, 101 (Mo. banc 1994)) (internal quotation marks omitted). Rost identifies no authority requiring the use of his preferred investigative methodology, and existing case law confirms the trial court's polling was permissible. *See State v. Simms*, 810 S.W.2d 577, 581 (Mo. App. E.D. 1991) ("The trial court . . . asked for a show of hands whether any member had discussed anything in connection with the case, its lawyers, witnesses or defendant. No one on the jury panel raised his hand."). Rost relies on *Travis v. Stone* in making his argument, which states "little weight [should] be given to the offending juror's assessment of the effect" of his or her misconduct. 66 S.W.3d 1, 4 (Mo. banc 2002). But, in assessing prejudice, *Travis* discussed jurors gathering extraneous evidence, and it distinguished that misconduct from the misconduct at issue here – brief discussions about the evidence during breaks. *Id.* at 5 n.2. It also addressed a situation where a trial court only heard from the offending juror. *Id.* at 5. Unlike *Travis*, the trial

19

court here performed a proper inquiry; it questioned the suspected jurors, the reporting jurors, and the jury as a whole to ascertain the extent of prejudice. *See **Smotherman v. Cass Reg'l Med. Ctr.***, 499 S.W.3d 709, 713 (Mo. banc 2016) ("The facts in ***Travis*** substantially differ from the facts here, as the trial court not only heard testimony from the offending juror, but also heard from eight non-offending jurors.").

Rost also asks us to review the record "in the light of the oft commented upon tendency of jurors to minimize their own misconduct." This we cannot do. We defer to the trial court's superior ability to evaluate the prejudicial effect of the alleged juror misconduct. ***State v. Lester***, 588 S.W.3d 893, 895 (Mo. App. S.D. 2019); ***Simms***, 810 S.W.2d at 581. After investigating, the trial court confirmed any improper comments did not impair the impartiality of the jury. It was then not an abuse of discretion to deny Rost's request for a mistrial. ***Lester***, 588 S.W.3d at 896 ("The trial court properly followed up on the complaint that the instructions may not have been followed. We must defer to the trial court's superior vantage point to appraise the trial situation."); ***State v. Herndon***, 224 S.W.3d 97, 102 (Mo. App. W.D. 2007) (holding a trial court did not abuse its discretion by not declaring a mistrial where the State established third-party contact did not influence the jury's verdict); ***State v. Turner***, 713 S.W.2d 877, 880 (Mo. App. E.D. 1986) (finding no "blatant juror misconduct" requiring a mistrial after two jurors "stated that no conclusions were drawn [from discussing the evidence] and that they retained an open mind about the case"). Point I is denied.

*Facts Relevant to Point II*

On December 18, 2017, the State charged Rost with six criminal counts: unlawful use of a weapon (Count I), armed criminal action (Count II), second-degree assault on a special victim (Count III), unlawful possession of a firearm (Count IV), first-degree tampering (Count V), and resisting a lawful stop (Count VI).  The first five counts stemmed from Rost's tampering with the truck and the traffic stop as previously described.  Count VI related to an allegation Rost resisted a lawful stop by fleeing from arresting officers, driving in excess of 90 miles per hour, and weaving into oncoming lanes of travel on April 13, 2017.

Rost filed a motion to sever all of the listed counts before trial, but he clarified at a pre-trial hearing that he was only seeking to sever Counts IV and VI, the charges for unlawful possession of a firearm and resisting a lawful stop.  The trial court granted Rost's motion to sever Counts IV and VI without objection from the State.  After the trial court severed Counts IV and VI, the State filed an amended felony information.  This amended felony information renumbered Counts IV and V to reflect the severance, charging Rost with unlawful use of a weapon (Count I), armed criminal action (Count II), second-degree assault on a special victim (Count III), *first-degree tampering (Count IV)*, *unlawful possession of a firearm (Count V)*, and resisting a lawful stop (Count VI). (Emphasis added).

Rost later filed a motion to sever the newly renumbered Count IV, arguing he had "serious and substantial reasons for testifying regarding the tampering in the first degree charge," because:

[T]he Court has overruled his Motion to Suppress Mr. Rost's statement to law enforcement and it is rife with statements against his interests regarding the tampering charge, but not with respect to the Unlawful Use of a Weapon, Armed Criminal Action, and Assault in the Second Degree charges. In Mr. Rost's statement to law enforcement, he alluded to the owner of the Chevrolet Silverado truck involved giving consent to drive the vehicle. There is no allegation that the vehicle was hot-wired or that the ignition had been altered in any way. There is evidence that when Mr. Rost had driven the vehicle on prior dates, he drove it with the keys, indicating that he had permission from the owner. At trial, Mr. Rost has a serious and substantial reason for testifying regarding the tampering in the first degree charge, as consent of the owner is in serious question. By that same token, Mr. Rost is dissuaded from testifying without the Tampering charge being severed, as he would be subject to cross-examination on charges wherein Mr. Rost has a valid and established *alibi*, as corroborated by an independent third party witness . . . [.]

He also asked the trial court to sever Count IV because the jury would "be unable to distinguish evidence that applies to the tampering with a motor vehicle charge and the rest of the charges." The trial court took up the motion at a pretrial hearing. At this hearing, Rost acknowledged the evidence of him tampering with the truck would be admissible even if the trial court severed Count IV from the remaining counts. Rost stood on the arguments in the motion, and only offered to elaborate further if the trial court requested it. The trial court did not ask anything further.

After the hearing, the trial court denied Rost's motion to sever. It concluded the evidence of tampering would be admissible to show Rost's motive for shooting at the officers even if Count IV was severed, joinder of the counts was proper, and any prejudice from joining the counts was therefore outweighed by the probative value of the evidence of Rost's tampering.

*Standard of Review*

The joinder and severance of multiple counts are separate issues for purposes of appellate review. ***State v. Jones***, 662 S.W.3d 204, 209 (Mo. App. S.D. 2023). "Once a

22

finding is made that joinder is proper, the trial court's decision will not be reversed absent a showing of both an abuse of discretion and a clear showing of prejudice." ***State v. Smith***, 389 S.W.3d 194, 208 (Mo. App. S.D. 2012). Rost does not challenge the joinder of Counts I through IV, and therefore "'the only issue before this Court is whether the trial court abused its discretion in failing to sever' the counts under Rule 24.07" and any resulting prejudice thereof. ***Jones***, 662 S.W.3d at 209 (quoting ***Boyd***, 659 S.W.3d at 922). "A trial court abuses its discretion if its ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." ***Boyd***, 659 S.W.3d at 923 (quoting ***State v. McKinney***, 314 S.W.3d 339, 342 (Mo. banc 2010)).

Severance is justified if, upon the filing of a written motion requesting a separate trial for an offense, "[a] party makes a particularized showing of substantial prejudice if the offense is not tried separately[,]" and the trial court "finds the existence of a bias or discrimination against the party that requires a separate trial of the offense." Rule 24.07. "In considering whether severance is required, the court considers the number of offenses joined, the complexity of the evidence, and the likelihood that the jury can distinguish the evidence and apply it, without confusion, to each offense." ***Downum***, 598 S.W.3d at 195 (quoting ***McKinney***, 314 S.W.3d at 342) (internal quotation marks omitted). "Missouri courts have repeatedly held that, when the evidence relating to each offense is uncomplicated and distinct, and the jury is properly instructed to return separate verdicts for each offense charged, there is no abuse of discretion in refusing to sever the counts." ***Jones***, 662 S.W.3d at 209-10 (quoting ***Boyd***, 659 S.W.3d at 922) (internal quotation marks omitted).

*The Trial Court did not Abuse its Discretion by Refusing to Sever the Tampering Count Against Rost from the Other Charged Offenses.*

There is no constitutional right to be tried for one offense at a time, and Rost acknowledges Counts I through IV were properly joined. **State v. St. George**, 497 S.W.3d 308, 311 (Mo. App. S.D. 2016). He nonetheless argues in Point II that the trial court erred in refusing to sever Count IV, the tampering count, from the other charges because he "had specific reasons for testifying as to the tampering charge and to avoid testifying on the other charges" and therefore "made a particularized showing of prejudice that would result from the failure to sever."

His motion to sever explained the "specific reasons" for testifying were his interview with the detective being "rife with statements against his interests regarding the tampering charge" and "consent of the owner [was] in serious question" at trial. The motion further stated Rost was "dissuaded from testifying without the Tampering charge being severed, as he would be subject to cross-examination on charges wherein Mr. Rost has a valid and established *alibi*[.]" As the Western District of this Court explained, "A defendant may be prejudiced when he has made a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other." **State v. Williamson**, 668 S.W.2d 597, 600 (Mo. App. W.D. 1984).[6] To establish substantial prejudice, "[i]t is essential that the defendant present

---

[6] This statement was described as "pure obiter dicta" in **State v. Seagraves**. 700 S.W.2d 95, 98 (Mo. App. E.D. 1985). The Supreme Court of Missouri has yet to resolve any disagreement between **Williamson** and **Seagraves**, but our opinion is not reliant on **Williamson**. Even if Rost could have established substantial prejudice on the basis he had "important" testimony to give regarding Count IV and a "strong need" against testifying on Counts I through III, his motion to sever Count IV was too general and conclusory to satisfy this standard.

enough information – regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other – to satisfy the court that the claim of prejudice is genuine." *State v. Hallmark*, 635 S.W.3d 163, 170 (Mo. App. E.D. 2021) (quoting *Seagraves,* 700 S.W.2d at 99). However, and despite referring to a "rife" amount of statements against his interest, Rost's motion to sever only specified the statement where he "alluded to the owner of the Chevrolet Silverado truck . . . giving consent to drive the vehicle." Rost failed to explain in his motion how this statement to law enforcement, or any other, undermined his defense, how he would have testified had the tampering charge been severed, or why such testimony was important to supplement his statements to law enforcement. He also failed to include any substance as to why he wished not to testify on the other counts beyond his general fear "he would be subject to cross-examination[.]"

Rost's motion to sever presented nothing more than claiming he wished to testify on one charge but not others. Such a claim is conclusory and does not establish the substantial prejudice required for severance. *Jones*, 662 S.W.3d at 210; *Hallmark*, 635 S.W.3d at 170; *State v. Green*, 505 S.W.3d 837, 840 (Mo. App. S.D. 2016); *State v. Bechhold*, 65 S.W.3d 591, 597 (Mo. App. S.D. 2002). The trial court did not abuse its discretion by refusing to sever Count IV because Rost did not supply sufficient information to establish substantial prejudice. We further reject Rost's argument that the jury would have been unable to distinguish evidence applicable to Count IV from the other counts. Where, as here, "the charges and evidence presented at trial were straightforward and the jury was instructed to consider each count separately[,]" a trial

25

court does not abuse its discretion by denying severance. *Jones*, 662 S.W.3d at 210 (quoting *Boyd*, 659 S.W.3d at 924).

Rost maintains his claim for severance is distinguishable from cases like *Hallmark* because his showing of substantial prejudice was allegedly not "carefully considered" by the trial court. According to him, the trial court's conclusion that the evidence of his tampering would be admissible regardless of severance "was simply boilerplate." We disagree. The fact "the same evidence would have been introduced at trial had the counts been severed is certainly relevant and appropriate to consider when the circuit court conducted its severance analysis." *Boyd*, 659 S.W.3d at 924 n.11. In this case, the trial court noted the evidence of Rost's tampering would be admissible to show his motive for shooting the officers during the traffic stop even if it severed Count IV. *See State v. Bowen*, 619 S.W.3d 620, 626 (Mo. App. S.D. 2021) (explaining when evidence of prior bad acts is admissible to establish motive). Rost confirmed to the trial court that evidence of him tampering with the stolen truck would be admissible, and his briefing on appeal does not claim otherwise. Given Rost's confirmation, it was not an abuse of discretion for Counts I through IV to be tried together. *Boyd*, 659 S.W.3d at 924 (affirming the denial of severance because "the same evidence would have been introduced at the separate trials").

Rost also contends the State's potential to cross-examine him on his prior convictions represented a "specific concern" not to testify. The speculation of potential cross-examination is not definite enough to show substantial prejudice. *Bechhold*, 65 S.W.3d at 597 ("[The defendant] is not aided in meeting this requirement [of substantial prejudice] by the speculation in his brief that if the counts had been severed he could

have testified in the tampering trial to explain his confession to the officers and not been forced to testify concerning his three prior convictions . . . [.]"); *see also* section 545.885.2 (defining "substantial prejudice" as "a bias or discrimination against the defendant or the state which is actually existing or real *and not one which is merely imaginary, illusionary or nominal*.") (emphasis added).  Point II is denied.

<u>Point IV:  Clerical Error</u>

*Standard of Review*

We may review an unpreserved claim for plain error when the claimed error "facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted."  **State v. Brandolese**, 601 S.W.3d 519, 526 (Mo. banc 2020) (quoting **State v. Clay**, 533 S.W.3d 710, 714 (Mo. banc 2017)); **State v. Perkins**, 640 S.W.3d 498, 501 (Mo. App. S.D. 2022).  If there is no facial showing of manifest injustice or miscarriage of justice, appellate courts should decline to exercise plain error review.  **Brandolese**, 601 S.W.3d at 526.  The alleged error must be evident, obvious, and clear; as well as outcome determinative.  **State v. Minor**, 648 S.W.3d 721, 731 (Mo. banc 2022).

*Remand is Required to Correct the Trial Court's Judgment Nunc Pro Tunc.*

Rost claims in his fourth point on appeal that the trial court plainly erred by executing its written judgment because it "materially differs from the jury's verdict and court's oral pronouncement of sentence in that the jury found Mr. Rost guilty of tampering in the first degree on [C]ount IV and not unlawful possession of a firearm." He asks this Court for remand to correct the judgment as to Count IV *nunc pro tunc*.

"The power to enter a *nunc pro tunc* order is a common law power derived from a court's jurisdiction over its records." **State ex rel. Poucher v. Vincent**, 258 S.W.3d 62, 65 (Mo. banc 2008) (quoting **Pirtle v. Cook**, 956 S.W.2d 235, 240 (Mo. banc 1997)).  We may invoke this power in criminal cases to correct clerical errors "if the written judgment does not reflect what actually was done." **State v. Christianson**, 642 S.W.3d 793, 801 (Mo. App. S.D. 2022) (quoting **State v. Smith**, 579 S.W.3d 284, 290 (Mo. App. S.D. 2019)); *see also* Rule 29.12(c).  "Clerical mistakes occur when, *inter alia*, a written sentence and judgment, (1) fails to accurately denominate defendant's counts and convictions on each count; (2) fails to accurately memorialize the jury's verdicts; and/or (3) fails to accurately memorialize the trial court's decision as it was announced in open court." **State v. Brown**, 558 S.W.3d 105, 114 (Mo. App. E.D. 2018).  If there are material differences between the written judgment and oral pronouncement at sentencing, the oral pronouncement controls.  **State ex rel. Zinna v. Steele**, 301 S.W.3d 510, 514 (Mo. banc 2010).  An unauthorized sentence in a written judgment affects substantial rights, results in manifest injustice, and thereby justifies plain error review.  **State v. Pliemling**, 645 S.W.3d 86, 92 (Mo. App. S.D. 2022); **Drennen v. State**, 906 S.W.2d 880, 882 (Mo. App. E.D. 1995).

The State agrees the trial court's written judgment incorrectly refers to Rost's conviction under Count IV as being for unlawful possession of a firearm, rather than tampering in the first degree.  The record clearly shows that, while the State's amended felony information and the jury instructions assigned the offense of tampering in the first degree to Count IV and the jury's verdict shows it found him guilty of the same charge under Count IV, the final written judgment convicts and sentences Rost under Count IV

28

for unlawful possession of a firearm. At the sentencing hearing, both Rost and the State informed the trial court its sentencing assessment incorrectly connected an unlawful possession of a firearm charge to Count IV. Both also confirm on appeal the trial court understood the conviction under Count IV to be for tampering in the first degree before it sentenced Rost. The trial court simply did not correct its error before entering the final judgment. Regardless, this error can be corrected *nunc pro tunc*. "Remand is the appropriate remedy." **State v. McClurg**, 543 S.W.3d 78, 83 (Mo. App. S.D. 2018). Point IV is granted.

## Conclusion

The trial court's judgment is affirmed. We remand the matter to the trial court solely for it to enter a judgment *nunc pro tunc* to correctly reflect Rost's conviction of tampering in the first degree under Count IV, not unlawful possession of a firearm. The trial court is instructed to enter a new judgment *nunc pro tunc* reflecting this correction.


JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

MARY W. SHEFFIELD, J. – CONCURS

BECKY J.W. BORTHWICK, J. – CONCURS